HOFFMAN, Judge:
 

 This is an appeal from an order entered September 29,1993 granting appellee’s preliminary objections and dismissing appellant’s amended complaint with prejudice. Appellant, Melissa Ellis Holewinski, presents the following issues for our review:
 

 
 *176
 
 I. Whether the court below erred when it determined as a matter of law that appellant had not set forth her claim for promissory estoppel as an exception to the at-will employment situation, despite the fact that appellant furnished additional consideration by working towards and obtaining advanced degrees for the purpose of enhancing her performance as administrative manager at Children’s Hospital of Pittsburgh.
 

 II. Whether the court below erred when it determined as a matter of law that a significant public policy was not present to create an exception to the at-will employment situation, despite the fact that appellee fired appellant and deprived her of her constitutional right to free speech simply out of retaliation for appellant’s form of “whistle blowing,” when she voiced her concern over the hiring of Dr. Albright.
 

 III. Whether the court below erred when it determined as a matter of law that an employment contract did not exist, despite the intent and conduct of appellant and appellee as exhibited through twelve years of service appellant, Melissa Ellis Holewinski, has given to appellee, Children’s Hospital of Pittsburgh.
 

 IV. Whether the court below erred by dismissing appellant’s defamation claim as a matter of law, despite the fact that appellee’s agents, and servants made defamatory per se statements that harmed appellant’s reputation throughout her department.
 

 Appellant’s Brief at v. For the following reasons, we affirm.
 

 Appellant’s allegations, as set forth by the trial court are as follows:
 

 [Appellant] was hired by [appellee] Children’s Hospital on June 2,1980. Over time, her position was upgraded several times. In 1991, the administration at Children’s Hospital proposed that one Dr. Leland Albright take over the position of chief of pediatric Neurosurgery. [Appellant] and two other employees had concerns about Dr. Albright’s abilities and voiced those concerns through the proper channels. In January of 1992, Dr. Albright was named Chief of
 
 *177
 
 Pediatric Neuro-surgery. He thereupon advised [appellant] that he planned to restructure her department, that he was going to place the job [appellant] held into a higher grade (thereby apparently increasing the required qualifications for filling the job), and that [appellant] had better look for another job. In April 1992, Dr. Albright notified [appellant] that the qualifications and responsibilities of her position were in fact being increased and that her final date of employment would be June 30, 1992. In the notification, Dr. Albright stated to [appellant]: “I thank you for the more than ten years of service you have provided to the Department of Neurosurgery.” [Appellant] thereupon “contacted the personnel department at Children’s Hospital, which confirmed [appellant’s] belief that she would be qualified for the administrative managerial position even as upgraded by Dr. Albright. In mid-May, 1992, Mary Burich was hired to fill [appellant’s] position to begin on July 1, 1993 [sic]. From mid-May to the end of June, 1992, Ms. Burich contacted [appellant] and members of [appellant’s] department “in a premature fashion which constituted harassment toward the [appellant] in that department operations were greatly hampered and/or disturbed.”
 

 Trial Court Opinion, March 15, 1994 at 1-2 (citations to amended complaint omitted).
 

 Appellant filed her first complaint on May 24, 1993 seeking monetary damages. On June 25, 1993 the trial court granted appellee’s preliminary objections, but . allowed appellant 30 days to file a more specific complaint. Appellant filed an amended complaint on July 26, 1993. Appellee responded with preliminary objections, which were granted by the trial court on September 29, 1993, thereby dismissing appellant’s amended complaint with prejudice. This timely appeal followed.
 

 Appellant first contends the trial court improperly dismissed Count I of her amended complaint setting forth a claim for promissory estoppel. We disagree.
 

 
 *178
 
 The doctrine of promissory estoppel is only employed to enforce a promise where there has been no consideration.
 
 Cardamone v. University of Pittsburgh,
 
 253 Pa.Super. 65, 72 n. 4, 384 A.2d 1228, 1232 n. 4 (1978) (en banc) (citations omitted). This doctrine requires that:
 

 (1) the promisor must make a promise that he should reasonably expect to induce action or forbearance on the part of the promisee; (2) the promise must actually induce such action or forbearance; and (3) injustice can be avoided only by enforcement of the promise.
 

 Cardamone,
 
 253 Pa.Super. at 74, 384 A.2d at 1233;
 
 DelConte v. Stefonick
 
 268 Pa.Super. 572, 576, 408 A.2d 1151, 1115-16 (1979).
 

 In the case sub judice, appellant’s complaint is bereft of any allegation of a promise or reliance thereupon. Therefore, it fails to set forth a claim for promissory estoppel.
 
 Banas v. Matthews Intern. Corp.,
 
 348 Pa.Super. 464, 487 n. 12, 502 A.2d 637, 648 n. 12 (1985) (en banc) (doctrine of promissory estoppel does not provide basis for relief when promise is absent).
 

 Appellant next contends that the trial court erred in dismissing appellant’s wrongful discharge claim based upon her “retaliatory firing.” We disagree.
 

 In Pennsylvania, as a general rule, no common law cause of action exists against an employer for termination of an at-will employment relationship.
 
 Krajsa v. Keypunch, Inc.,
 
 424 Pa.Super. 230, 237, 622 A.2d 355, 358 (1993) (“an at will employee may be terminated for good reason, bad reason, or no reason at all”). Moreover, “exceptions to this rule have been recognized in only the most limited of circumstances, where discharges of at-will employees would threaten clear mandates of public policy.”
 
 Id.
 
 at 237, 622 A.2d at 358 (citing
 
 Clay v. Advanced Computer Applications, Inc.,
 
 522 Pa. 86, 88, 559 A.2d 917, 918 (1989)). In fact, courts have only recognized the public policy exception on three occasions; all situations where the discharge resulted from plaintiffs compliance with a clear and applicable statute or constitution.
 
 Krajsa,
 
 424
 
 *179
 
 Pa.Super. at 239, 622 A.2d at 359 (citing
 
 Field v. Philadelphia Electric Co.,
 
 388 Pa.Super. 400, 565 A.2d 1170 (1989) (violation of public policy where discharge was based on performance of duty to report nuclear safety violations under federal statute);
 
 Hunter v. Port Authority,
 
 277 Pa.Super. 4, 419 A.2d 631 (1980) (violation of Pennsylvania Constitution to deny public employment to person on basis of prior conviction for which he was pardoned); and
 
 Reuther v. Fowler & Williams, Inc.,
 
 255 Pa.Super. 28, 386 A.2d 119 (1978) (public policy violated where employer fires employee for serving on jury duty)).
 

 In the instant case, the public policy at issue is the need to protect whistle-blowers. Although there is a whistle-blower law in Pennsylvania, 43 Pa.Stat.Ann. § 1421 (1986), it only applies to employees discharged from governmental entities, and therefore does not protect appellant. Furthermore, as we have already explained in
 
 Krajsa,
 
 424 Pa.Super. at 238-9, 622 A.2d at 358, we are precluded from creating or forming public policy with respect to wrongful discharge. Therefore, as appellant’s claim is not based on an established public policy exception, this claim is meritless.
 
 Krajsa,
 
 424 Pa.Super. 230, 622 A.2d 355 (no public policy exception to at-will employment recognized where employee is discharged for threatening to report unlawful business practices).
 

 Appellant next alleges the trial court erred when it decided, as a matter of law, no employment contract existed between appellant and appellee. We disagree.
 

 In the absence of an agreement for a fixed period of time, an employee is hired at-will.
 
 Muscarella v. Milton Shoe Manufacturing Co.,
 
 352 Pa.Super. 158, 162, 507 A.2d 430, 432 (1986),
 
 appeal denied,
 
 514 Pa. 636, 522 A.2d 1105 (1987) (citing
 
 Richardson v. Charles Cole Memorial Hospital,
 
 320 Pa.Super. 106, 466 A.2d 1084 (1983)). More fundamentally, for an implied contract to exist, both the employer and employee must intend that a contract exist, thereby changing the relationship from at-will employment into a contractual arrangement.
 

 
 *180
 
 It is basic contract law that one cannot suppose, believe, suspect, imagine or hope that an offer has been made. An offer must be intentional, definite in its terms and communicated, otherwise the minds cannot meet---- An offer must define its terms, specify the thing offered and be an intention of the present or future to be bound.
 

 Morosetti v. Louisiana Land and Exploration Co.,
 
 522 Pa. 492, 494-95, 564 A.2d 151, 152 (1989). Because appellant fails to adequately allege a basis for an implied contract, this claim is meritless.
 

 Appellant’s final argument is that the trial court erred by dismissing appellant’s defamation claim. We disagree.
 

 “A statement is defamatory if it tends to harm the reputation of another so as to lower him in the estimation of the community or deter third persons from associating or dealing with him.”
 
 Kryeski v. Schott Glass Technologies,
 
 426 Pa.Super. 105, 116, 626 A.2d 595, 600 (1993),
 
 appeal denied,
 
 536 Pa. 643, 639 A.2d 29 (1994). In a defamation action, the law requires that the court first determine whether the statement is capable of defamatory meaning.
 
 Raffensberger v. Moran,
 
 336 Pa.Super. 97, 102-03, 485 A.2d 447, 450 (1984).
 

 Here, appellant bases her claim on
 

 (a) the nature of [appellant’s] termination together with (b) the January 28, 1992 meeting between Dr. Albright and [appellant], and (c) the eventual hiring of Ms. Mary Burich as Administrative Manager to begin on July 1, 1992, and (d) the acts of Ms. Mary Burich during the period from approximately mid-May through the end of June, 1992.
 

 Amended Complaint ¶ 46. Appellant seems to allege that these factors together somehow constitute publication of a defamatory statement. However, appellant fails to set forth a specific statement. Accordingly, appellant’s claim is without merit.
 
 Cf. Cashdollar v. Mercy Hospital,
 
 406 Pa.Super. 606, 616, 595 A.2d 70, 75 (1991) (termination letter, expressing defendant’s evaluation of plaintiff performance in the context of his employment and reasons for his dismissal, is not defamatory on its face).
 

 
 *181
 
 For the above reasons, the trial court’s order dismissing appellant’s complaint in its entirety with prejudice, is affirmed.
 

 Affirmed.