**Mark Joseph BROSSO**

v.

**DEVICES FOR VASCULAR INTERVENTION, INC.**

Civ. A. No. 94–6712.

United States District Court, E.D. Pennsylvania.

March 10, 1995.

**474**

Sidney L. Gold, Lovitz & Gold, Brian L. Calistri, Weber, Goldstein, Greenberg & Gallagher, Philadelphia, PA, for plaintiff Mark Joseph Brosso.

Raymond A. Kresge, Stephen J. Sundheim, Pepper, Hamilton & Scheetz, Philadelphia, PA, for defendants Devices for Vascular Intervention, Inc., Eli Lilly and Co., Greg R. Patterson, Michael Kopp, Allan R. Will.

## MEMORANDUM

DALZELL, District Judge.

Plaintiff Mark Joseph Brosso has brought this diversity action against his former employer, defendant Devices for Vascular Intervention, Inc. ("DVI"), alleging, in Count I of the complaint, that DVI terminated Brosso in retaliation for his failure to relinquish ownership in a medical device he designed. DVI has moved to dismiss this Count pursuant to Federal Rule of Civil Procedure 12(b)(6). We shall grant the motion.

### I. Factual and Procedural Background

The following facts are taken from the complaint and are not disputed for the purposes of this motion. DVI employed Brosso, a Pennsylvania citizen, as a sales territory manager for Pennsylvania and neighboring states from January 2, 1990 until his termination on October 16, 1992.[1] Brosso was earning approximately $260,000 per year when he was fired. Brosso did not have an employment contract with DVI and it is not disputed that he was an at-will employee.

On March 22, 1992, Brosso informed Brian Farley, DVI's vice-president of research and development, that he had designed a mechanical thrombectomy catheter on his own time and with his own resources. About a month and a half later, Michael Kopp, an officer of DVI, allegedly threatened to terminate Brosso if he did not relinquish to DVI his interest in the catheter design. Brosso refused DVI's repeated demands to relinquish his ownership interest in the catheter design and was subsequently terminated.

Brosso commenced this action in the Court of Common Pleas of Philadelphia County, Pennsylvania, and defendants removed it to this Court based on our diversity jurisdiction. Brosso filed a four-count complaint against DVI, Eli Lilly & Co., and three DVI officers, Allan R. Will, Greg R. Patterson, and Michael Kopp, but the parties have stipulated to dismiss counts III and IV and all defendants, except DVI.[2]

In Count I, Brosso claims that his termination constitutes a wrongful discharge in violation of a public policy recognized by the Commonwealth of Pennsylvania, namely, his common law property right in the medical device and his property rights under the Article I, Section 8, Clause 8 and the Fifth and Fourteenth Amendments to United States Constitution. DVI, on the other hand, contends that the narrow exception to the at-will employment rule in Pennsylvania for violations of public policy does not include retaliation for refusal to relinquish an ownership interest in property. DVI has now moved to

---

1. "Devices for Vascular Intervention, Inc. markets atherectomy catheter systems for the treatment of coronary vascular disease by the removal of atherosclerotic plaque. In the United States, sales are conducted by direct sales representatives." Eli Lilly & Co., December 31, 1993 SEC Filing 10–K, at 4. DVI is a wholly-owned subsidiary of defendant Eli Lilly & Co. and is incorporated, and has its principal place of business, in California. Complaint, ¶ 2.

2. We approved that Stipulation on March 8, 1995.

dismiss Count I pursuant to Fed.R.Civ.P. 12(b)(6).[3]

## II. *Discussion*

We have on two prior occasions discussed employment relationships and the existence of the tort of wrongful discharge in Pennsylvania,[4] albeit in slightly different contexts. *See Kedra v. Nazareth Hosp.*, 868 F.Supp. 733, 736–37 (E.D.Pa.1994) (predicting that Pennsylvania Supreme Court would not recognize tort of wrongful discharge with specific intent to harm), and *Melendez v. Horizon Cellular Tel. Co.*, 841 F.Supp. 687, 692–94 (E.D.Pa.1994) (same).

■ For over a century in Pennsylvania, an employer was free to discharge an at-will employee "with or without cause at pleasure". *Henry v. Pittsburg & L.E.R.R.*, 139 Pa. 289, 297, 21 A. 157 (1891). In 1974, the Pennsylvania Supreme Court opened the door to wrongful discharge suits in *Geary v. United States Steel Corp.*, 456 Pa. 171, 319 A.2d 174 (1974), by postulating in *dictum* that exceptions to the at-will rule may exist in theory for the torts of wrongful discharge with specific intent to harm and wrongful discharge in violation of public policy, although it did not find those exceptions applicable to the facts before it. *Geary*, 456 Pa.

at 178–80 & 184–85, 319 A.2d at 177–78 & 180. While subsequent Pennsylvania Supreme Court opinions in *Clay v. Advanced Computer Applications, Inc.*, 522 Pa. 86, 559 A.2d 917 (1989), and *Paul v. Lankenau Hosp.*, 524 Pa. 90, 569 A.2d 346 (1990), have, in our view, eliminated the exception for wrongful discharge with specific intent to harm, *see Melendez* and *Kedra*, the exception for wrongful discharge in violation of public policy remains viable. *See e.g., Rutherfoord v. Presbyterian–Univ. Hosp.*, 417 Pa.Super. 316, 329 n. 4, 612 A.2d 500, 506 n. 4 (1992) ("The public policy exception to the at-will doctrine of employment has been consistently recognized in Pennsylvania.").

While neither the Pennsylvania Supreme Court nor our Court of Appeals has ever defined the exact perimeter of the public policy exception in Pennsylvania, our Court of Appeals has attempted to "draw certain principles that govern what an employee must show to make out a claim for wrongful discharge under Pennsylvania's public policy exception to the principle of at-will employment". *Clark v. Modern Group Ltd.*, 9 F.3d 321, 328 (3d Cir.1993).[5]

In *Clark*, an employer terminated its chief financial officer for his insistence on reporting automobile expense reimbursements as

---

**3.** When considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), we must take all allegations contained in the complaint as true and construe them in a light most favorable to the plaintiff. *H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 249, 109 S.Ct. 2893, 2906, 106 L.Ed.2d 195 (1989); *Rocks v. City of Phila.*, 868 F.2d 644, 645 (3d Cir.1989). We may grant a motion to dismiss for failure to state a claim upon which relief can be granted only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957); *Frazier v. Southeastern Pa. Transp. Auth.*, 785 F.2d 65, 66 (3d Cir.1986).

**4.** The parties agree, and we concur, that Pennsylvania law governs this case. In a diversity action, we employ the choice of law rules of the forum state, here Pennsylvania. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 1021, 85 L.Ed. 1477 (1941); *Carrick v. Zurich–American Ins. Group*, 14 F.3d 907, 909 (3d Cir.1994). Under Pennsylvania's "hybrid approach" of combining Restatement (Second) methodology with "interest analysis", *Carrick*, 14 F.3d at 909 (citing *Lacey v. Cessna Aircraft Co.*,

932 F.2d 170, 187 (3d Cir.1991)), we find that Pennsylvania's substantive law applies because Brosso performed most of his work here, lived here and was terminated here.

**5.** The difficulty in determining the scope of the public policy exception to Pennsylvania's at-will employment rule arises from the perils of forecasting the position the supreme court of a state will take on an as-yet undecided issue, as we are required to do in every diversity action. *Erie R.R. v. Tompkins*, 304 U.S. 64, 78, 58 S.Ct. 817, 822, 82 L.Ed. 1188 (1938); *see also*, Dolores K. Sloviter, *A Federal Judge Views Diversity Jurisdiction through the Lens of Federalism*, 78 Va.L.Rev. 1671, 1675–81 (1992) ("[T]he state courts have found fault with a not insignificant number of past 'Erie guesses' made by the Third Circuit and our district courts."). When there is scant guidance from a state's highest court, intermediate appellate decisions may suggest how the supreme court would might rule and "may constitute presumptive evidence of state law in appropriate circumstances." *Borse v. Piece Goods Shop, Inc.*, 963 F.2d 611, 614 (3d Cir.1992).

taxable income on the company's tax records when the company contended that it did not need to do so. Clark claimed that the public policy exception to the at-will rule forbade termination of an employee who reasonably believed that his employer requested him to perform an unlawful act, even if it later turned out that the requested act was legal. The Third Circuit rejected this view. In describing the scope of the public policy exception to Pennsylvania's at-will employment rule, the Court of Appeals stated:

> [A]n at-will employee invoking Pennsylvania's public policy exception must show his discharge offended a clear mandate of public policy by resulting from conduct on the part of the employee that is required by law or from the employee's refusal to engage in conduct prohibited by law. The public policy exception has been most frequently applied under Pennsylvania law when the discharge is a result of the employee's compliance with or refusal to violate the law. We see little evidence in the Pennsylvania cases to date that an alleged public interest will be recognized as a clear mandate of public policy in the absence of a legislative or constitutional endorsement in the form of a specific prohibition, requirement or privilege.
>
> Absent a violation of law, it is difficult for an at-will employee seeking recovery for wrongful discharge to point to a common law, legislative or constitutional principle from which a clear public policy exception to Pennsylvania's doctrine of at-will employment could be inferred.

*Clark*, 9 F.3d at 328 (citations, footnote, ellipsis, indentation and brackets omitted).[6]

*Clark* and other cases[7] have stated that there have been only three reported Pennsylvania cases that have granted relief to an employee who was wrongfully discharged in violation of public policy. In *Field v. Phil. Elec. Co.*, 388 Pa.Super. 400, 565 A.2d 1170 (1989), an employee of an electric utility stated a valid claim for wrongful discharge after his employer terminated him in retaliation for reporting safety violations to the Nuclear Regulatory Commission, as the law required. In *Hunter v. Port Auth. of Allegheny County*, 277 Pa.Super. 4, 419 A.2d 631 (1980), an applicant for a job as a bus driver was held to have been denied his state constitutional right to engage in one of the "common occupations of life" when his prospective employer refused to hire him because of a thirteen-year-old assault conviction, even though he had been unconditionally pardoned. In the third cited case of *Reuther v. Fowler & Williams, Inc.*, 255 Pa.Super. 28, 386 A.2d 119 (1978), the Superior Court held that it was a violation of public policy for an employer to terminate an employee for serving on jury duty.

We have found a fourth Pennsylvania case in which an employee obtained relief on this theory, *Kroen v. Bedway Security Agency, Inc.*, 430 Pa.Super. 83, 633 A.2d 628 (1993), where a building security officer's employer asked him to submit to a lie detector test. This building had been the site of a spate of recent thefts. The security officer refused and his employer relocated him and reduced his pay, constructively discharging him. The lower court entered summary judgment for the employer but the Superior Court reversed on appeal. Citing the Third Circuit's opinion in *Perks v. Firestone Tire & Rubber Co.*, 611 F.2d 1363 (3d Cir.1979) that addressed the identical issue, the court held that "the discharge of an at-will employee for his refusal to submit to a polygraph test violates the public policy of this Commonwealth, and an action for wrongful discharge will lie." *Id.*, 430 Pa.Super. at 93, 633 A.2d at 633.[8]

The Pennsylvania cases decided since *Clark* confirm that the public policy exception to the at-will employment rule in Pennsylvania is indeed still a narrow one. In *Brozovich v. Dugo*, —— Pa.Cmwlth. ——, 651 A.2d 641 (1994), the Director of Parks and

---

6. Surprisingly, neither party cited *Clark*, the Third Circuit's most recent pronouncement on Pennsylvania's public policy exception.

7. *See e.g., Holewinski v. Children's Hosp. of Pittsburgh*, 437 Pa.Super. 174, 649 A.2d 712, 715 (1994), and *Krajsa v. Keypunch, Inc.*, 424 Pa.Super. 230, 239, 622 A.2d 355, 359 (1993).

8. *Kroen* was decided less than a month before *Clark*, which may explain why the case escaped the attention of the *Clark* panel.

Recreation for the Hampton Township and his employer reached a confidential severance settlement after the employee was arrested for driving under the influence of alcohol and accused of making unwanted sexual advances towards another Township employee. When the circumstances surrounding the employee's resignation were published in a local newspaper, the employee brought suit against the township alleging, *inter alia*, that he was terminated in violation of "a constitutionally protected fundamental right to his reputation". *Id.*, 651 A.2d at 643. The Commonwealth Court upheld summary judgment for the defendant, concluding as a matter of law that the discharge did not violate any public policy because there were valid reasons for the termination.

*Holewinski v. Children's Hosp. of Pittsburgh*, 437 Pa.Super. 174, 649 A.2d 712 (1994) involved a claim against a private employer for the retaliatory discharge of a whistleblower. Noting that Pennsylvania's whistleblower statute applies only to public employees, the court dismissed the claim as "meritless" because it was "not based on an established public policy exception". *Id.*, 649 A.2d at 715. *See also, Perry v. Tioga County*, 168 Pa.Cmwlth. 126, —— & n. 8, 649 A.2d 186, 189 & n. 8 (1994) (noting that there is no general public policy protecting whistleblowers in the private sector).

Finally, an employee involved in an automobile accident and who was charged with, but never convicted of, possession of controlled substances, was terminated from his job as an equipment operator in *Rank v. Township of Annville*, 163 Pa.Cmwlth. 492, 641 A.2d 667 (1994). In upholding the dismissal of the suit, the Commonwealth Court distinguished *Hunter* and rejected the em-

ployee's contention that his termination violated the public policy that one is presumed innocent until proven guilty. *Id.*, 163 Pa. Cmwlth. at 496–97, 641 A.2d at 669–70.

Emerging from this jurisprudence would seem to be the rule that, to uphold an action for wrongful termination in violation of public policy, a court must find a public policy that is "clear and specific". *Borse*, 963 F.2d at 617. Brosso relies on his common law property interest in the design of the catheter. Specifically, Brosso cites state and federal cases for the proposition that an employee has a common law property right in any subject matter of which he is the inventor, even if he created the invention during the course of his employment. Brosso also finds a public policy in the United States Constitution, particularly Article I, Section 8, Clause 8 [9] and the Fifth [10] and Fourteenth [11] Amendments. We do not believe any of these federal authorities provide the sort of "clear and specific" public policy that would permit Brosso to recover.

We express no opinion on Brosso's conclusion that he indeed has a common law property interest in the mechanical thrombectomy catheter because it is irrelevant for the purposes of resolving this motion. Even if we accept Brosso's legal conclusion as true,[12] however, DVI asked Brosso, on his account of it, to relinquish his ownership in the catheter design; DVI did not ask him to abstain from action "that is required by law" or "to engage in conduct prohibited by law." *Clark*, 9 F.3d at 328. In short, we have not detected a clear mandate of public policy here that the Pennsylvania Supreme Court would recognize in a wrongful termination suit.

---

**9.** That clause reads:

> [The Congress shall have Power] To promote the Progress of Science and useful Arts, by securing for limited Times to Authors and Inventors the exclusive Right to their respective Writings and Discoveries;

U.S. Const. art. I, § 8, cl. 8.

**10.** Brosso relies upon the Takings Clause of the Fifth Amendment:

> nor shall private property be taken for public use, without just compensation.

U.S. Const. amend. V.

**11.** Brosso relies upon the Due Process Clause of the Fourteenth Amendment:

> nor shall any State deprive any person of life, liberty, or property, without due process of law;

U.S. Const. amend. XIV, § 1.

**12.** On a Rule 12(b)(6) motion, we need only accept as true the factual allegations of the complaint, not the legal conclusions that the plaintiff derives from those allegations. 5A Wright & Miller, *Federal Practice and Procedure*, § 1357 & n. 12–21.

**478**

The federal constitutional provisions that Brosso cites also do not support his claim. By its terms, Article I, Section 8, Clause 8 is a grant of power to Congress, not to any individual inventor. It has long been held that this constitutional provision authorizes Congress to enact the patent laws, but does not confer any rights by itself upon an individual. *Graham v. John Deere Co. of Kansas City,* 383 U.S. 1, 6, 86 S.Ct. 684, 688, 15 L.Ed.2d 545 (1966); *Scott Paper Co. v. Marcalus Mfg. Co., Inc.,* 326 U.S. 249, 255, 66 S.Ct. 101, 104, 90 L.Ed. 47, *reh'g denied,* 326 U.S. 811, 66 S.Ct. 263, 90 L.Ed. 495 (1945). Notably, there is no suggestion here that Brosso ever patented his catheter design.

Similarly, Brosso's invocation of the Fifth and Fourteenth Amendments is unavailing because the protections of these Amendments are triggered by government action only. *See, e.g., Nollan v. Cal. Coastal Comm'n,* 483 U.S. 825, 831, 107 S.Ct. 3141, 3145, 97 L.Ed.2d 677 (1987) (Fifth Amendment); *Rendell–Baker v. Kohn,* 457 U.S. 830, 838, 102 S.Ct. 2764, 2770, 73 L.Ed.2d 418 (1982) (Fourteenth Amendment); *Lugar v. Edmondson Oil Co., Inc.,* 457 U.S. 922, 937, 102 S.Ct. 2744, 2754, 73 L.Ed.2d 482 (1982) (Fourteenth Amendment); *Penn Central Transp. Co. v. City of New York,* 438 U.S. 104, 123–28, 98 S.Ct. 2646, 2659–61, 57 L.Ed.2d 631 (Fifth Amendment), *reh'g denied,* 439 U.S. 883, 99 S.Ct. 226, 58 L.Ed.2d 198 (1978). There is no dispute that DVI is a private actor. Thus, Brosso cannot rely on any of the constitutional provisions he cites as representing a "clear" mandate of Pennsylvania public policy that the Pennsylvania Supreme Court would recognize.

Because we find that DVI did not violate a clear mandate of Pennsylvania public policy, Brosso's claim for wrongful discharge in violation of public policy cannot stand. We shall therefore grant DVI's motion to dismiss for failure to state a claim upon which relief may be granted. An appropriate Order follows.

### ORDER

AND NOW, this 10th day of March, 1995, upon consideration of defendant Devices for Vascular Intervention, Inc.'s motion to dismiss, and the response and reply thereto,

and in accordance with the accompanying Memorandum, it is hereby ORDERED that:

1. The motion is GRANTED; and

2. Count I of the complaint is DISMISSED.