# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Kenneth Paul Gilmore, | : | |
| Appellant | : | |
| | : | No. 31 C.D. 2015 |
| v. | : | Submitted: September 14, 2015 |
| | : | |
| Borough of Kutztown | : | |

BEFORE:   HONORABLE BERNARD L. McGINLEY, Judge
          HONORABLE ROBERT SIMPSON, Judge
          HONORABLE PATRICIA A. McCULLOUGH, Judge

OPINION NOT REPORTED

**MEMORANDUM OPINION**
**BY JUDGE SIMPSON**                    **FILED: October 16, 2015**

Kenneth Paul Gilmore (Gilmore) appeals from an order of the Court of Common Pleas of Berks County (trial court) that entered judgment for the Borough of Kutztown (Employer) and dismissed Gilmore's breach of implied contract and promissory estoppel claims.[1]  Gilmore sought back pay and benefits following Employer's termination of his employment.  The trial court determined Employer hired Gilmore as an at-will employee, and no implied contract for the continued payment of benefits existed.  With respect to promissory estoppel, the trial court determined Gilmore failed to show Employer made any promises to him regarding continuation of employment or benefits.

On appeal here, Gilmore contends the trial court erred in determining he did not have an implied contract with Employer, which Employer breached

---

[1] The Honorable M. Theresa Johnson ultimately presided over Employer's motion for summary judgment, following the Honorable Jeffrey L Schmehl's appointment as a U.S. District Court Judge in 2013.

when it terminated Gilmore's employment in 2006. Gilmore further asserts the trial court erred in failing to determine he had a right to lost wages and benefits for the period of time he was medically barred from returning to work. In addition, Gilmore claims the doctrine of promissory estoppel applies under the facts of this case, and the trial court erred in failing to determine whether a jury question existed as to what benefits, including back pay, Employer owed Gilmore under a theory of promissory estoppel. For the reasons that follow, we affirm.

## I. Background
### A. Generally

Employer hired Gilmore, an at-will employee, as a laborer in 2003. Gilmore worked for Employer as a laborer until July 2006, when he sustained serious injuries in a non-work-related automobile accident that took his mother's life. In August 2006, Gilmore's doctor diagnosed him as temporarily disabled as a result of severe hip injuries he suffered in the accident. Initially, Gilmore could not work at all following the accident. Thus, Gilmore took paid leave under the Family and Medical Leave Act (FMLA), 29 U.S.C. §§2601-2654, for the 12-week maximum period.

In December 2006, the FMLA leave period expired. On December 13, 2006, Gilmore's doctor issued him a return to work slip clearing him to return to light-duty work as of January 2, 2007, subject to light-duty restrictions, including a 50-pound lifting restriction. The doctor also indicated he would reevaluate Gilmore in three months.

In response, Employer informed Gilmore that it had no available light-duty laborer positions. Following the expiration of Gilmore's paid FMLA leave, Employer provided some extra leave without pay, with life and health insurance benefits, until it terminated Gilmore's employment by Borough council vote effective December 31, 2006.

Gilmore's doctor eventually cleared him to return to full-duty work in March 2007, approximately 10 weeks after Employer dismissed him. Several months later, Employer advertised an open laborer position in a Reading newspaper. Gilmore applied, and Employer called him for an interview. Ultimately, following some tests, Employer rehired Gilmore in May 2007 as a new employee for the laborer position he performed prior to his injuries. Employer did not provide Gilmore with back pay, and it did not restore his previously earned seniority.

Initially, Gilmore filed a claim of disability discrimination with the U.S. Equal Employment Opportunity Commission (EEOC). In September 2009, the EEOC did not find probable cause for Gilmore's claim.

**B. Original Complaint**

In December 2009, Gilmore filed a complaint against Employer, which included two counts. Count I involved a claim under the Americans with Disabilities Act of 1993 (ADA), 42 U.S.C. §§12101-12213. Count II involved a claim under the Pennsylvania Human Relations Act (PHRA).[2] Employer removed

---

[2] Act of October 27, 1955, P.L. 744, as amended, 43 P.S. §§951-963.

3

the case to federal district court and filed a motion to dismiss. In its motion, Employer asserted both claims were barred by the statute of limitations. Following a hearing, Gilmore abandoned his ADA and PHRA claims.

## C. Amended Complaint

In February 2010, Gilmore filed an amended complaint, which set forth a claim under the Wage Payment and Collection Law (Wage Law).[3] Upon Employer's motion, the federal district court dismissed the case without prejudice because of lack of subject matter jurisdiction.

Two and a half years later, in December 2012, Gilmore filed a motion to reinstate the amended complaint in the trial court. Following oral argument, President Judge Jeffrey L. Schmehl dismissed the Wage Law claim as untimely, but permitted Gilmore to file an action in assumpsit, which the trial court determined would not impermissibly raise an entirely new cause of action after the expiration of the limitation period.

## D. Second Amended Complaint (Assumpsit)

In April 2013, Gilmore filed a second amended complaint setting forth an assumpsit claim against Employer. Gilmore's complaint states in pertinent part:

> 21. The Plaintiff believes, and therefore avers, that by refusing to pay him the amounts he was entitled to receive for the period of time he was not allowed to return to work, the Defendant withheld providing

---

[3] Act of July 14, 1961, P.L. 637, as amended, 43 P.S. §§260.1-260.45.

4

benefits that it could have paid, either in the form of short term disability or supplemental wage loss.

\* \* \* \*

23. The Plaintiff believes, and therefore avers, that pretrial discovery in this case will reveal that other employees have received compensation for periods of time when they were out of work due to illness.

24. The Plaintiff believes, and therefore avers, that due to circumstances surrounding his termination and his eventual rehire by the Defendant, he should have been provided with [back pay] for the period of time in which he was out of work.

25. Plaintiff believes, and therefore avers, that Defendant has policies, practices and procedures in place that would have justified the payment to him of [back pay] and lost benefits for the period of time in which he was displaced from work by the Defendant.

26. The Plaintiff has suffered, and will suffer, continuing and ongoing economic losses due to the actions of the Defendant, as enumerated herein.

27. The Plaintiff believes, and therefore avers, that due to the willful non-payment of [back pay] and benefits owed to the Plaintiff by the Defendant, he is entitled to damages for the economic losses he sustained.

28. The Plaintiff believes, and therefore avers, that he is also entitled to [back pay], benefits and accrued interest pursuant to the Defendant's existing pay scales and salary policies.

Second Am. Compl. at ¶¶21, 23-29.

## E. Preliminary Objections/Discovery Order

Employer responded with preliminary objections, including a demurrer, which the trial court overruled. In its order, the trial court stated in pertinent part:

> [Gilmore] is entitled to proceed to discovery in an effort to establish that he was entitled to back pay on the basis of [Employer] policies, any other implied agreements, or any other causes of action pled in the Second Amended Complaint.

Tr. Ct. Order, 6/25/13. Employer then filed an answer and new matter. Following the close of pleadings, the parties proceeded with pre-trial discovery. Employer deposed Gilmore. Thereafter, Gilmore deposed Employer's manager, Gabriel Khalife (Borough Manager).

## F. Motion for Summary Judgment

Following the close of discovery, Employer filed a motion for summary judgment. Employer sought summary judgment because the evidence failed to establish that Gilmore was anything other than an at-will employee at the time of his dismissal in December 2006. Further, no evidence supported Gilmore's claim of entitlement to back pay and benefits for the period of time he did not work. Borough Manager testified that when Employer rehired Gilmore, it did not agree to provide Gilmore with back pay for the period of time he was not working. Dep. of Gabriel Khalife, 5/13/14 (Khalife Dep.), at 22. Borough Manager further testified Employer never provided back pay to an employee it terminated and then rehired. Id. at 22-23.

6

### G. Gilmore's Response

Conversely, Gilmore argued Employer, in accord with its custom and practice, should have provided him with light-duty employment or continued his unpaid leave and other benefits until he obtained medical clearance to return to full-time employment. Gilmore testified that Employer permitted two other employees, Jay Smolnik, an electrician, and Dan Batz, a mechanic, to return to light-duty work after they exhausted their FMLA leave. Dep. of Kenneth Paul Gilmore, 11/19/13 (Gilmore Dep.) at 18-19. In the present case, Gilmore asserted, Employer offered little or no explanation why it could not have extended his leave by an extra 10 weeks. Gilmore further claimed that in the case of a female employee who ran out of FMLA leave, Employer permitted other employees to donate their FMLA leave time so she could stay off work without pay. In the present case, however, Employer rejected other employees' offers of donations of leave to keep Gilmore employed. See Gilmore Dep. at 30.

Therefore, Gilmore asserted Employer's practice of providing compensation and benefits to its injured employees created an implied contract under which Gilmore had a right to a continuation of employment and benefits. Gilmore argued Employer's decision to terminate him rather than to continue his unpaid leave and other benefits constituted a factual issue for the jury in his breach of implied contract claim.

In support of his position, Gilmore cited Bauer v. Pottsville Area Emergency Medical Services, Inc., 758 A.2d 1265 (Pa. Super. 2000) and Sullivan v. Chartwell Investment Partners, L.P., 873 A.2d 710 (Pa. Super. 2005). In Bauer,

the Superior Court recognized that the promise of benefits in an employee handbook may evidence the employer's intent to supplant the at-will employment rule and be legally bound by its representations in the handbook. In Sullivan, the Superior Court recognized that even an at-will employee may have a contractual right to benefits.

Gilmore also cited several cases stating that an implied contract is an actual contract. See, e.g., Elias v. Elias, 237 A.2d 215 (Pa. 1968). Gilmore then claimed the evidence adduced before the trial court indicated an implied contract existed. Gilmore essentially argued Employer's failure to continue his benefits to keep him employed raised a material issue of fact relevant to his claim for Employer's breach of implied contract.

Gilmore also raised a promissory estoppel claim. He argued Employer knew all along that it would rehire him and that he justifiably relied, to his detriment, on that *clearly telegraphed* assumption. Gilmore therefore claimed entitlement to back pay for the period of his unemployment based on a theory of promissory estoppel.

Here, Gilmore claimed, Employer briefly terminated him, then it rehired him. Therefore, Gilmore had a reasonable expectation of being brought back, and he was in fact brought back. Nobody replaced him in the interim. Consequently, Gilmore argued a jury question existed as to what benefits, including back pay, Employer owed him under a theory of promissory estoppel.

## H. Motion for Summary Judgment Granted

In October 2014, the trial court granted Employer's motion for summary judgment and entered judgment in Employer's favor. Summary judgment is appropriate where the pleadings, depositions, answers to interrogatories, admissions and affidavits, if any, demonstrate there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Kniaz v. Benton Borough, 642 A.2d 551 (Pa. Cmwlth. 1994) (citing Dep't of Envtl. Res. v. Bryner, 613 A.2d 43 (Pa. Cmwlth. 1992)). When a motion for summary judgment is made and supported, the adverse party may not rest on mere allegations or denials in his pleadings, but must produce affidavits or other evidence demonstrating specific facts in dispute. Id.

The trial court noted that in Pennsylvania an at-will employee has no common law cause of action against an employer for termination of at-will employment, unless the discharge threatens clear public policy mandates. Hunger v. Grand. Cent. Sanitation, 670 A.2d 173 (Pa. Super. 1996). An at-will employee may be discharged for a good reason, a bad reason, or no reason at all. Krasja v. Keypunch, Inc., 622 A.2d 355 (Pa. Super. 1993). The public policy exception is very narrow and applies only in rare instances where important issues of public policy are raised. Reese v. Tom Hesser Chevrolet-BMW, 604 A.2d 1072 (Pa. Super. 1992). The trial court further observed that in the present case, no such public policy issues were applicable.

Further, the trial court determined that the record, viewed in a light most favorable to Gilmore as the non-moving party, is devoid of any facts that

9

could reasonably establish the existence of any relevant implied agreements or Borough policies that could overcome the strong presumption that Gilmore was, at all times, an at-will employee. Also, Gilmore's breach of implied contract claim seeks compensation for a period of time that he did not work for Employer.

The trial court also distinguished the Superior Court's decisions in Bauer and Sullivan. In Bauer, a case involving a breach of contract claim by an emergency medical technician (EMT), the employee handbook provided that full-time benefits would vest in part-time employees who worked more than 36 hours per week after 90 days of work. At that point, the employee would receive the wages and benefits of a full-time employee for weeks in which they worked 36 or more hours. After working 200 days, the employee complained that his full-time benefits had yet to vest. The employer then fired him. The employee sued the employer for breach of contract, and the trial court sustained the employer's preliminary objection on the ground that the employee handbook stated the employee was an at-will employee at all times.

On appeal, the Superior Court reversed, noting an employee handbook is enforceable against an employer "if a reasonable person in the employee's position would interpret its provisions as evidencing the employer's intent to supplant the at-will rule and be bound legally by its representations in the handbook." Bauer, 758 A.2d at 1269. "The handbook must contain a clear indication that the employer intended to overcome the at-will presumption." Id. (emphasis added). A factual issue existed as to whether the handbook contained evidence of the employer's intent to be legally bound by it.

10

In short, the provisions in the handbook constituted a unilateral offer that the employee accepted by rendering a performance; no additional consideration was required. In <u>Bauer</u>, the Superior Court allowed the breach of contract claim to proceed limited to the period during which the employee fulfilled the terms of the contract by working over 36 hours per week.

In addition, the Superior Court observed that an important public policy supported enforcement of the handbook. The provision of EMT services touches on the availability of 24-hour emergency medical services. Flexibility in the employment relationship is therefore needed. In other words, in accord with the handbook, an EMT who works more than 36 hours per week for a period of time is contractually entitled to full-time benefits for that period of time. However, if the employee thereafter works less than 36 hours per week, his entitlement to full-time benefits ceases.

Here, however, the trial court noted Gilmore's breach of contract claim seeks compensation for the period between his termination and rehire, during which he performed no work. In addition, the present case does not fall within a specific public policy exception. As such, <u>Bauer</u> is inapplicable.

Similarly, in <u>Sullivan</u>, a vice-president of marketing brought an action against his former employer, an investment firm, for, among other things, breach of an express agreement for compensation made during the course of his employment. In <u>Sullivan</u>, the employer offered to pay the employee a guaranteed minimum, which the employee accepted, foregoing his right to resign. The

11

employee alleged his employer breached the compensation agreement by failing to pay him an amount equal to his 2000 earnings. The employee also stated a claim for $75,000 in damages.

The trial court in Sullivan, however, dismissed the employee's claims on preliminary objections on the basis that the employee's at-will status precluded him from establishing a contractual right to compensation. In reversing, the Superior Court found the employee's breach of contract claim legally sufficient. The Court found the employee's at-will status irrelevant as to whether a contract existed during the term of his employment. Although the employer could have terminated the employee at any point, the employee would nevertheless be entitled to receive the agreed upon compensation earned prior to his termination. See Sullivan, 873 A.2d at 716.

In the present case, the trial court again noted that Gilmore's breach of contract claim sought compensation for a period following his termination from employment during which he performed no work for Employer. Therefore, Sullivan is inapplicable.

The trial court further determined no implied contract existed based on Employer's past instances of providing light-duty work to two employees, a mechanic and an electrician, while they recovered from their injuries. Here, the trial court determined, even considering the surrounding circumstances, the record failed to establish the existence of an implied contract between Employer and Gilmore. To the contrary, Gilmore, was, at all times, an at-will employee.

12

Finally, the trial court rejected Gilmore's promissory estoppel claim. The trial court noted Gilmore failed to provide any evidence that Employer promised him anything. Therefore, the trial court noted that the doctrine of at-will employment controls and that promissory estoppel is inapplicable.

Consequently, the trial court determined Gilmore failed to articulate specific facts sufficient to overcome his status as an at-will employee. As such, the trial court requests we affirm its entry of judgment for Employer and dismiss Gilmore's appeal.[4]

## II. Discussion
### A. Breach of Implied Contract
### 1. Argument

Gilmore first contends that the trial court erred in determining he could not satisfy the elements of a successful breach of contract claim.

Gilmore notes Employer terminated him because he could not return to his full-time laborer position following his automobile accident. However, he asserts, an examination of Employer's conduct reveals an implied agreement existed to keep him employed until he could return to that position. In December 2006, Gilmore's doctor issued Gilmore a return to work slip indicating he could

---

[4] Our review of a trial court order granting summary judgment is limited to determining whether the trial court erred as a matter of law or abused its discretion. Kuniskas v. Commonwealth, 977 A.2d 602 (Pa. Cmwlth. 2009). We must examine the record in a light most favorable to the non-moving party, accepting as true all well-pled facts and reasonable inferences to be drawn from those facts. Id.

13

return to work on January 2, 2007 subject to light-duty restrictions. For example, Gilmore could not lift more than 50 pounds. Gilmore's doctor further indicated he would reevaluate Gilmore in three months.

In his deposition, Gilmore testified Employer permitted two other employees, Jay Smolnik, an electrician, and Dan Batz, a mechanic, to return to light-duty work after they exhausted their FMLA leave. Gilmore Dep. at 18-19. Gilmore further testified that in the case of a female employee who ran out of FMLA leave, Employer sent out a memo asking other employees to donate their FMLA leave so she could remain on leave status. Gilmore Dep. at 30. Therefore, Gilmore asserts, Employer customarily continues to employ persons with medical restrictions. Thus, Gilmore argues, his temporary disability placed him in similar circumstances with these other temporarily disabled employees. Therefore, Employer's policy of accommodation should have also applied to him.

However, instead of providing Gilmore a light-duty work assignment, Employer terminated him. Gilmore asserts his supervisor, Norm Milnes (Supervisor), opposed his termination and wrote a letter in support of Gilmore keeping his job. Supervisor's support is further evidence of Employer's breach of an implied contract to keep Gilmore employed.

Gilmore therefore argues there are material questions of fact remaining as to whether Employer breached an implied contract with him. Therefore, the trial court erred in granting summary judgment.

14

## 2. Analysis

Summary judgment is proper in cases where the party who will bear the burden of proof at trial fails to produce evidence of facts essential to a cause of action or defense in which a jury trial would require that the issue be submitted to a jury. Jones v. Se. Pa. Transp. Auth., 772 A.2d 435 (Pa. 2001).

A successful breach of contract action involves: (1) the existence of a contract; (2) a breach of a duty imposed by the contract; and, (3) damages. Sullivan. A contract implied in fact is an actual contract that arises where the parties agree upon the obligations to be incurred, but their intention, instead of being expressed in words, is inferred from acts in light of the surrounding circumstances. Elias; Ameripro Search, Inc. v. Fleming Steel Co., 787 A.2d 988 (Pa. Super. 2001).

The trial court determined Gilmore, an at-will employee, failed to present sufficient evidence that would support the inference of an implied contract based upon the surrounding circumstances. We agree. In the absence of an agreement for a fixed period of time, an employee is hired at-will. Holewinski v. Children's Hosp. of Pittsburgh, 649 A.2d 712 (Pa. Super. 1994). The at-will doctrine creates a strong presumption that a contractual employment relationship does not exist, and it impedes an employee's ability to bring a cause of action for the termination of the employment relationship. Sullivan.

In short, no common law cause of action exists against an employer for termination of an at-will employment relationship. Werner v. Zacyczny, 681

15

A.2d 1331 (Pa. 1996). This also applies to at-will municipal or government employees. Id.

Moreover, Employer's offer of light-duty employment in the past to an electrician and a mechanic does not establish an implied contractual obligation on Employer's behalf to continue Gilmore's employment status and benefits until he could return to full-time work as a laborer. To that end, Borough Manager testified Employer has no light-duty policy. Khalife Dep. at 16. If an injured laborer could perform his job duties, Employer would permit them to continue working. Id. at 17. If the restrictions placed time restraints on the employee, such as four hours instead of eight hours, that would be allowed. Id. However, Employer does not make light-duty work available. Id.

As Employer further explains in its brief, a laborer position, by definition, involves nothing but manual labor. Appellee's Br. at 9. Therefore, there is no such thing as a light-duty laborer position. Id. Thus, available light-duty work did not exist. Further, like most municipalities, Employer can only afford to pay a limited number of employees. Id. As a result, Gilmore cannot claim Employer breached any implied contractual obligation based on the surrounding circumstances when it terminated his at-will employment because he could not return to the full duties of a laborer.

Borough Manager further testified as to one instance several years ago when Employer, after being approached by the employee's union (AFSCME), entered into an agreement where employees with a certain amount of earned

16

FMLA sick leave could donate a limited amount of time to an injured employee who was a member of the collective bargaining unit. Khalife Dep. at 12-14. However, Borough Manager further testified this was a one-time agreement negotiated by the union for this particular employee, and Employer did not intend to establish a policy based on this incident. Id.

Based on the record, we discern no error in the trial court's determination that no implied contract existed based on Employer's custom or practice of providing light-duty work. Borough Manager testified Employer does not offer a light-duty work program for laborers. Khalife Dep. at 16. Further, Gilmore testified he did not know of any Borough laborers who worked light-duty positions. Gilmore Dep. at 29-30. In short, the totality of the circumstances in this case do not establish an implied contract between Employer and Gilmore to provide him with light-duty work while he recovered from injuries sustained in an automobile accident unrelated to his employment. As such, Gilmore's at-will status continued at all times during the course of his employment preceding his December 2006 discharge. Therefore, Gilmore's claim for breach of implied contract fails. Werner.

## B. Lost Wages and Benefits

### 1. Argument

Although Employer eventually rehired him, Gilmore contends Employer improperly withheld benefits it should have paid, either in the form of short-term disability or supplemental wage loss, for the time he could not return to work. Gilmore asserts an employer's obligation to provide compensation and

17

benefits is different from its obligation to provide employment for a particular duration. To that end, specific provisions in a contract or handbook for compensation or benefits may bind the employer to provide such items. Bauer. Even an at-will employee may have a contractual right to compensation. Sullivan. Further, there is no legal requirement that the specific provisions for benefits be in writing. Hamilton v. Air Jamaica, Ltd., 945 F.2d 74 (3d Cir. 1991), cert. denied, 503 U.S. 938 (1992). Therefore, Gilmore argues, a question of material fact remains as to his entitlement to benefits during the period when he did not work.

## 2. Analysis

First and foremost, Gilmore's breach of contract claim seeks compensation for the period during which he performed no work. In addition, the present case does not fall within a specific public policy exception. In both Bauer and Sullivan, the employees' breach of contract claims alleged their employers failed to compensate them for work actually performed during the course of their employment.

Here, Gilmore remained an at-will employee until Employer terminated his employment at the end of 2006. Absent a contract, Employer could terminate Gilmore at any time for any reason or no reason. Stumpp v. Stroudsburg Mun. Auth., 658 A.2d 333 (Pa. 1995). As of the date of Gilmore's termination, Employer no longer had any contractual obligation to provide benefits to him. Thus, Gilmore's reliance on Bauer and Sullivan is misplaced.

Further, Gilmore testified he could not recall whether his health insurance provided for short-term disability or supplemental wage loss. Gilmore

18

Dep.at 9. In short, nothing in the record establishes Employer had an implied contractual obligation to continue to provide Gilmore with light-duty work or employee benefits when he could not physically return to work for Employer as a laborer. As noted above, no common law cause of action exists against an employer for termination of an at-will employment relationship. Werner. This also applies to at-will municipal or government employees. Id. Therefore, Gilmore's breach of implied contract claim for back pay and benefits for the period of time he did not work fails.

## C. Promissory Estoppel

### 1. Argument

In his final argument, Gilmore contends Employer knew all along that it would rehire him and that he justifiably relied, to his detriment, on that assumption. Therefore, Gilmore claimed entitlement to back pay for the period of his unemployment based on a theory of promissory estoppel.

Here, Gilmore argues, Employer briefly terminated then rehired him. Gilmore asserts he had a reasonable expectation under the circumstances of being brought back, and he was, in fact, brought back. Nobody replaced him in the interim. Consequently, Gilmore asserts the trial court erred in failing to determine a jury question existed as to what benefits, including back pay, Employer owed him under a theory of promissory estoppel.

## 2. Analysis

For the doctrine of promissory estoppel to apply: (1) the promisor must make a promise that he should reasonably expect to induce action or forbearance on the part of the promisee; (2) the promise must actually induce such action or forbearance; and (3) injustice can be avoided only by enforcement of the promise. Holewinski. The party asserting an estoppel claim has the burden of establishing all the essential elements. Thatcher's Drug Store of W. Goshen, Inc. v. Consol. Supermarkets, Inc., 636 A.2d 156 (Pa. 1994).

We agree with the trial court that Gilmore failed to provide any evidence that Employer promised him anything. In particular, we note Gilmore did not testify Employer made him any promises at all. To the contrary, Gilmore testified he did not think Employer would want him back after his termination. Gilmore Dep. at 21. However, he saw a job advertisement in a newspaper and decided to apply. Id. at 22. Gilmore further testified he did not ask to be rehired at his former salary. Id. at 25. In addition, Gilmore did not request back pay. Id. at 26. Although he inquired about the possibility of getting his lost seniority back, he did not testify that anyone ever promised him that. Finally, Gilmore agreed that Employer had no obligation to rehire him. Id. at 29. In short, the record shows Employer never made any promises to rehire Gilmore at his former salary with back pay. Thus, Gilmore's promissory estoppel claim fails. Holewinksi.

## III. Conclusion

Summarizing, viewing the record in the light most favorable to Gilmore, we discern no genuine issue of material fact exists as to whether the

20

doctrine of at-will employment controls here.  In addition, the evidence, viewed in a light most favorable to Gilmore, fails to establish the existence of an implied contract between Employer and Gilmore to provide him with light-duty work or employee benefits when he could not return to work for Employer as a laborer. Therefore, Gilmore's breach of implied contract claim fails.  Further, the record is devoid of any evidence indicating Employer made any promises to rehire Gilmore at his former salary with back pay.  Consequently, Gilmore's promissory estoppel claim also fails.  For these reasons, we affirm the trial court's order granting Employer's motion for summary judgment.

ROBERT SIMPSON, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Kenneth Paul Gilmore,                                     :
                                    Appellant             :
                                                          :      No. 31 C.D. 2015
                              v.                          :
                                                          :
Borough of Kutztown                                       :

# **O R D E R**

     **AND NOW**, this 16th day of October, 2015, for the reasons stated in the foregoing opinion, the order of the Court of Common Pleas of Berks County is **AFFIRMED**.

 

                                                                   
ROBERT SIMPSON, Judge