ROADSIDE AUTO BODY, INC., *et al.,* Plaintiffs-Appellees, v. SCOTT A. MILLER, Defendant-Appellant (The Industrial Commission, Defendant).

Second District   No. 2—95—1233

Opinion filed December 3, 1996.

Brian G. Hubka and Roy P. Amatore, of Law Office of Roy P. Amatore, both of Chicago, for appellant.

Eric L. Brodie and John P. Connolly, both of Sweeney & Riman, Ltd., of Chicago, for appellees.

JUSTICE THOMAS delivered the opinion of the court:

The plaintiffs, Roadside Auto Body, Inc. (Roadside), and Liberty Mutual Insurance Company (Liberty Mutual), filed this declaratory judgment action in the circuit court of Lake County against the defendants, Scott Miller and the Industrial Commission (Commis-

sion), seeking to vacate as fraudulent a workers' compensation settlement agreement approved by the Commission. Following a bench trial, the trial court found that Miller fraudulently filed a workers' compensation claim, and, therefore, the settlement agreement entered into by the parties was void. The court entered judgment in favor of the plaintiffs for $56,465.78, which represented the amount the plaintiffs had paid Miller for temporary total disability and medical benefits. The court further ordered that the order of the Commission awarding Miller penalties and attorney fees be set aside. Miller appeals.

Jim Best testified that he was the owner of Roadside and that Miller was one of his employees in 1990. In May 1990, Miller reported that he had suffered an injury to his back while working at Roadside on March 26, 1990. As far as Best knew, there were no witnesses to the accident. Best had some concerns that Miller's back injury was due to a preexisting condition, so he called Liberty Mutual, Roadside's insurance carrier, to voice his concerns. Best was told that, as long as the injury occurred at Roadside, it was compensable, even if the employee had a preexisting condition.

On March 4, 1992, Best was informed that Liberty Mutual had settled Miller's workers' compensation claim. At that time, Ron Hinde, an employee of Roadside, told Best that he thought there was something wrong with Miller's claim but he did not elaborate. Thereafter, Best contacted John Simon and Larry Cozzi of Liberty Mutual to discuss Miller's claim. At that time, Best had no additional information about the legitimacy of Miller's claim. On March 13, 1992, and March 18, 1992, Best talked with John Kaminski, a fraud investigator for Liberty Mutual, about Miller's case. Prior to March 18, 1992, Best did not have any specific information from Hinde indicating that Miller's claim was not valid. After refreshing his recollection from labor control records, Best stated that on the date of the alleged accident Miller did not perform any work on the truck he claimed to have been working on when he injured his back.

Charles Whitley testified that he was the first Liberty Mutual claim representative assigned to Miller's workers' compensation claim. According to Whitley, Miller told him that he had injured himself while attempting to lift some equipment with the help of the owner of the vehicle, Ed Dominick.

John Simon, a claims specialist for Liberty Mutual, testified that he received the Miller file on January 30, 1992. When he reviewed the file and performed some follow-up investigation in February 1992, there was no indication at that time that the claim was not compensable. On March 4, 1992, Simon settled the claim with Miller's at-

torney. That same day, Simon received a call from Best, who told Simon that Miller may have previously injured himself somewhere else. Simon informed Best that a preexisting injury that is aggravated is still compensable under the Workers' Compensation Act (Act) (820 ILCS 305/1 *et seq.* (West 1994)). Despite the lack of evidence indicating fraud, Simon sent the file to Kaminski for further review. Simon also noted that on March 5, 1992, he conferred with Ed Makauskas, a claims manager for Liberty Mutual, and advised him that the insured thought the claim was fraudulent. However, Makauskas did not believe fraud was involved. Simon explained that often an allegation of fraud on the part of the employer simply turns out to be a case involving an aggravation of a preexisting condition.

Dawn Benjamin, the office manager at Roadside, testified that her duties included submitting insurance forms. On May 21, 1990, Miller reported his March 26, 1990, injury for the first time. Miller told Benjamin that the injury occurred while he worked on Ed Dominick's truck. Miller did not miss any work between March 26, 1990, and May 21, 1990.

Michael Nitti, the shop manager at Roadside, testified that, from the date of the alleged injury until it was reported, he did not observe Miller having any difficulty completing his employment responsibilities. Nitti further testified that lifting an axle assembly into place, as Miller claimed he had been doing at the time of the accident, was typically a two-person job that was not physically possible to accomplish without help. Nitti stated that Roadside had a policy requiring all employees to immediately report on-the-job injuries to him. He first learned of the alleged incident when it was reported to Benjamin on May 21, 1990.

Edward Dominick was the owner of the truck that Miller allegedly worked on when he was injured. Dominick testified that he did not assist Miller in working on any part of his truck and did not witness the alleged accident.

Ron Hinde testified that Miller was his co-worker at Roadside and prior to that at All Tune and Lube. While both men were working at Roadside, Miller told Hinde that he was going to report an on-the-job back injury so that he could get his back repaired, which he had injured while in the military. Hinde did not believe that Miller injured his back at Roadside. Hinde did not come forward with this information immediately because he did not want to get involved. He eventually told Kaminski on March 18, 1992, about Miller's previous back injury and his plans to have surgery through workers' compensation. Hinde further testified that Miller approached Hinde periodically, pressuring him to corroborate Miller's story. When

Hinde refused, Miller became verbally abusive and threatened to burn down Hinde's house.

John Kaminski, supervisor of field investigations for Liberty Mutual, testified that his unit often received fraud claims only to find out that the allegation of fraud was simply an aggravation of a preexisting condition. When he received Miller's file, he did not find anything to indicate that Miller's claim was fraudulent. Rather, he thought this was another case involving an aggravation of a preexisting injury without any evidence of fraud. When Best voiced his concerns about fraud on March 5, 1992, there was no indication of fraud. Nonetheless, to address Best's concerns, Kaminski scheduled a meeting with Best for March 13, 1992. Kaminski noted that he met with Best on that date but nothing surfaced at that meeting to suggest anything other than an aggravation of a preexisting condition. When Kaminski returned to Roadside on March 18, 1992, Best asked him to talk with Hinde and Nitti. After he talked with Hinde, Kaminski concluded that Miller had fabricated his workers' compensation claim. He immediately contacted Simon to determine the status of the settlement of the case and learned that the Commission had already approved the settlement contract executed on behalf of Miller and Roadside. According to Kaminski, March 18, 1992, was the first time he heard an allegation that Miller had not been injured working at Roadside.

Paul Schoenbeck testified that he was working with Miller at the time of Miller's back injury. Schoenbeck stated that the accident occurred because they were both lifting an axle when Schoenbeck dropped his end of the axle, causing Miller to hurt his back. Schoenbeck stated that Best had been informed of the accident on the date it occurred. Schoenbeck admitted that he and Miller had been roommates for five months.

Lawrence Cozzi, an attorney employed by Liberty Mutual, testified that he reviewed Miller's file and was convinced the claim was compensable. He then signed the lump sum settlement contract on March 11, 1992, on behalf of Roadside. At that time, he was not aware of any evidence of fraud.

Miller testified that he had suffered a back injury while in the military that had been diagnosed as spondylolisthesis. Miller admitted that he talked to Hinde about back problems but denied any conversation about having his back repaired through workers' compensation benefits. Miller stated that his injury occurred while he was working on Dominick's vehicle and trying to lift an axle up from the floor by himself when he felt pain in his back. Miller denied that he had threatened Hinde.

Dr. Richard Berglund testified in his deposition that he examined Miller on April 6, 1990. Berglund opined that Miller was suffering from an acute herniated disc rather than a long-term, chronic injury. He further testified that he felt the likelihood of Miller's back injury being a preexisting condition was minimal because he would have experienced pain and disability. Dr. Berglund acknowledged that Miller never told him that he had chronic back problems.

On appeal, Miller initially contends that the trial court erred in vacating the Commission's approval of the settlement contract because (1) the plaintiffs waived their right to allege fraud by signing the contract, which contained language stating that it was "to resolve the dispute about the benefits to which the petitioner is entitled"; (2) the proper forum to dispute the issue of whether there was a work-related accident was before the Commission and the plaintiffs waived their defense of the claim by settling the case with knowledge of unresolved issues of fact; (3) the plaintiffs waived their right to claim fraud by closing their eyes to the fraud; and (4) the Commission had primary jurisdiction over the case because it possessed specialized expertise to determine whether Miller was injured at work.

■ Section 19(f) of the Act provides that "[t]he decision of the Commission acting within its powers, according to the provisions of paragraph (e) of this Section shall, *in the absence of fraud*, be conclusive unless reviewed as in this paragraph hereinafter provided." (Emphasis added.) 820 ILCS 305/19(f) (West 1994). The Illinois Supreme Court has held that the statute does not confer jurisdiction upon the Commission to reopen and set aside a lump sum settlement. *Michelson v. Industrial Comm'n*, 375 Ill. 462, 467-68 (1941). However, the statute plainly indicates that fraud is a basis upon which a Commission decision may be reexamined, and the supreme court has long held that a party may maintain a complaint before the circuit court in equity to procure relief from a judgment of the Commission based on fraud. *Daugherty v. National Union Electric Corp.*, 160 Ill. App. 3d 747, 749 (1987). Were a circuit court not empowered, in equity, to set aside a fraudulently obtained judgment rendered by the Commission, that portion of section 19(f) of the Act that permits such relief would be rendered meaningless and insulate a defendant from liability for fraudulent conduct. *Daugherty*, 160 Ill. App. 3d at 749.

Applying the above-mentioned principles, we reject Miller's claim that the circuit court was not the proper forum and lacked jurisdiction to hear this fraud case. Moreover, Miller's claim of waiver is not supported by the record.

■■ After careful perusal of the record, we find it apparent that

right up to the time of settlement Roadside and Liberty Mutual had no indication that Miller did not incur an injury at work. Rather, the investigation and communication concluded prior to settlement revealed that Miller may have had a preexisting condition and Best was unclear as to whether Roadside was liable for an aggravation of that injury. Liberty Mutual did not learn that Miller had fabricated his claim until Kaminski spoke with Hinde on March 18, 1992, several days after the Commission had approved the settlement. Since the fraud perpetrated by Miller was the basis for the settlement, he cannot successfully argue waiver. Because the Commission was not empowered to reopen the case, the plaintiffs properly filed their complaint in the circuit court of Lake County.

The present case differs from the typical workers' compensation case where the issue of a work-related injury is at stake. Here, the facts suggest that the complainant himself did not believe he sustained an accident at work but asserted falsely that he did so. In the typical case, a complainant genuinely believes his injury is work related and that it occurred within the scope of his employment, but his belief may simply be erroneous as opposed to fraudulent. At any rate, we would agree that the Commission is well qualified to resolve issues involving fraud in connection with an allegedly work-related injury. However, the issue was never brought before the Commission in this case and the contract was approved by the Commission without knowledge on the part of the plaintiffs or the Commission that Miller had filed a fraudulent claim. Under the circumstances, the circuit court was empowered to set aside the judgment of the Commission approving the parties' settlement.

■ Miller next argues that the trial court erred in admitting the testimony of Hinde. He contends that because Hinde's testimony did not specify the location where the conversation between the two of them occurred it lacked an adequate foundation.

Miller does not cite any authority in support of his argument. Supreme Court Rule 341(e)(7) requires that arguments in an appellant's brief be supported by citation to authority. 155 Ill. 2d R. 341(e)(7). Accordingly, we find that Miller has waived the argument on appeal. See *Ollivier v. Alden*, 262 Ill. App. 3d 190, 199 (1994). Even assuming that Miller did not waive the argument, we would find that Hinde's testimony was properly admitted, despite the absence of a specific location, to impeach Miller's testimony and as a party admission. See *People v. Cobb*, 97 Ill. 2d 465, 479-81 (1983); *Boyce v. Risch*, 276 Ill. App. 3d 274, 278-79 (1995).

Miller next argues that the plaintiffs failed to prove fraud by clear and convincing evidence.

■ The elements of fraudulent misrepresentation are (1) a false statement of material fact; (2) known or believed to be false by the party making it; (3) intent to induce the other party to act; (4) action by the other party in justifiable reliance on the truth of the statement; and (5) damage to the other party resulting from such reliance. *Giammanco v. Giammanco*, 253 Ill. App. 3d 750, 757 (1993). These elements must be proved by clear and convincing evidence. *Williams v. Chicago Osteopathic Health Systems*, 274 Ill. App. 3d 1039, 1048 (1995). However, the trial court's findings of fact will not be disregarded unless they are against the manifest weight of the evidence. *Chicago Title & Trust Co. v. First Arlington National Bank*, 118 Ill. App. 3d 401, 410 (1983). On appeal, the reviewing court must take questions of testimonial credibility as resolved in favor of the prevailing party and must draw from the evidence all reasonable inferences in support of the judgment. *Chicago Title & Trust Co.*, 118 Ill. App. 3d at 410.

■ Applying the above-mentioned principles, we conclude that the trial court's finding that Miller filed a fraudulent claim was not against the manifest weight of the evidence. In that regard, we first note that numerous inconsistencies existed between Miller's version of the alleged accident and other evidence in the case: (1) although he claimed to have injured his back on March 26, 1990, while working on Dominick's vehicle, he waited nearly two months to report the accident; (2) Miller told a Liberty Mutual representative that he was working with Dominick when he hurt his back, but Dominick denied it and Miller claimed at trial that he was lifting the axle alone; (3) Roadside computer records did not show that Miller worked on Dominick's vehicle on the day Miller claimed; and (4) Schoenbeck, a friend of Miller, testified that while he and Miller lifted the axle, he lost his grip on the axle, causing Miller to injure his back, yet Miller claimed he was lifting it alone.

Whereas the trial court found Miller's testimony to lack credibility, the trial court found Hinde's testimony particularly credible and persuasive. Hinde testified that Miller told him that he had hurt his back in the military and wanted to get it repaired through workers' compensation and that he wanted to get out of his line of work by collecting the proceeds of a workers' compensation claim. Once Miller filed his claim, he repeatedly pressured Hinde to claim that he had witnessed the alleged accident. When· Hinde refused, Miller threatened to burn Hinde's house down. It has long been a rule of law that efforts made by a party to suborn witnesses or fabricate evidence imply an admission that the party has no right to recover if the case was tried on the evidence as it exists. *Chicago City Ry. Co. v. McMahon*, 103 Ill. 485, 488 (1882).

Miller relies heavily on the testimony of Dr. Berglund, who opined that Miller was suffering from a herniated disc rather than a long-term chronic back injury. However, Miller did not inform Berglund about his history of back problems. At any rate, the fact that Berglund's testimony may have favored Miller does not render the trial court's finding against the manifest weight of the evidence in light of all the evidence presented in the case and given the trial court's evaluation of the credibility of the witnesses.

Miller next argues that the plaintiffs did not reasonably rely on any statement of Miller. Miller contends that because Liberty Mutual was conducting a fraud investigation at the time of settlement they could not have relied on the statements of Miller. We disagree.

■ Generally, in a fraud action, the determination of whether the plaintiff's reliance was justifiable necessitates examination of all facts which the plaintiff knew, as well as those facts which the plaintiff could have learned through the exercise of ordinary prudence. *Weber v. De Kalb Corp.*, 265 Ill. App. 3d 512, 516 (1994). However, it has been noted that, when a defendant makes a positive statement of material fact with the intention of inducing a party to act in reliance thereon, it is ineffective to charge the plaintiff with negligence. *Commercial National Bank v. Federal Deposit Insurance Corp.*, 131 Ill. App. 3d 977, 982 (1985). One is justified in relying upon the representations of another, without independent investigation, where the person to whom the representations are made does not have the same ability to discover truth as the person making the representations. *Gerill Corp. v. Jack L. Hargrove Builders, Inc.*, 128 Ill. 2d 179, 195 (1989).

■ Here, as previously stated, the plaintiffs had no reason to believe that Miller had not been injured at work at the time of the settlement. Moreover, they were not obligated to conduct a further investigation in view of Miller's positive statement of fact that he had been injured on the job and the plaintiffs' lack of ability to discover the truth. The evidence in that regard was almost exclusively within the control of Miller, and before Hinde came forward it would have been difficult if not impossible for the plaintiffs to discover the truth. Under the circumstances, we find that the trial court properly found that the plaintiffs justifiably relied on a material misrepresentation by Miller.

Lastly, we note that Miller argues for the first time in his reply brief that the trial court erred in both setting aside the settlement contract and entering a monetary judgment on behalf of the plaintiffs. He maintains that the proper remedy for his fraud was to vacate the settlement and remand the cause to the Commission.

■ Initially, we find that Miller waived the issue by raising it for the first time in his reply brief. See 155 Ill. 2d R. 341(g). Assuming that the issue has not been waived, Miller's argument would be rejected nevertheless. It is axiomatic that damages are recoverable in a fraud case and that the measure of damages is determined by assessing the loss to the plaintiff. *Giammanco*, 253 Ill. App. 3d at 758-61; *Shah v. Chicago Title & Trust Co.*, 119 Ill. App. 3d 658, 662 (1983). Thus, we find no error in the trial court's award of damages to the plaintiffs for the amount the plaintiffs lost in paying the settlement. A remand to the Commission is not proper since it has no jurisdiction to hear a common-law fraud case and therefore, no jurisdiction to assess damages in this case. Here, the circuit court did not make a decision with respect to an award under the workers' compensation statute but instead assessed damages in a fraud case. The authority cited by Miller in support of his position has no application here.

For the foregoing reasons, the judgment of the circuit court of Lake County is affirmed.

Affirmed.

GEIGER and HUTCHINSON, JJ., concur.