**James C. PERMENTER, Plaintiff,**

v.

**CROWN CORK & SEAL CO., INC., Defendant.**

**No. Civ.A. 98–3937.**

United States District Court, E.D. Pennsylvania.

Feb. 26, 1999.

Arnold Y. Steinberg, Pittsburgh, PA, for plaintiff.

Vernon L. Francis, Dechert, Price & Rhoads, Philadelphia, PA, for defendant.

## MEMORANDUM & ORDER

KATZ, Senior District Judge.

Before the court is the defendant's motion for summary judgment and plaintiff's cross-motion for partial summary judgment. Because there is no genuine issue of material fact regarding plaintiff's claims of breach of contract, fraudulent inducement, or invasion of privacy, the complaint must be dismissed.

### I. Factual Background

The basis of this suit is an employment relationship between plaintiff James Permenter and defendant Crown Cork & Seal (Crown). After being referred to Crown by a headhunter, see Ex. A at 18 (Dep. of James Permenter),[1] Mr. Permenter met with Carl Armand and Ed Richter, two individuals at Crown's Alsip, Illinois facility, to discuss two employment positions, one of which was in South Africa. See id. at 19–20.[2] After other interviews, see id. at 23–27, Mr. Permenter was hired by Crown as a project manager with the duty of supervising a plant start-up operation in South Africa. See Ex. B (assignment letter).[3] Although he remained a United States employee of Crown, he was considered "on loan" to Crown Cork Company S.A. Ltd., a joint venture between Crown and a South African company. See id.; see also Ex. D at 9 (Dep. of James Sadler).

Mr. Permenter began his work in South Africa in 1995 when he performed an audit of a Crown manufacturing plant. After returning to the United States in the late fall, see Ex. A at 40–41, 45, Mr. Permenter moved to South Africa with his family in January 1996. See id.; see also Ex. H ¶ 12 (response to interrogatory). Prior to this move to South Africa, Mr. Permenter sold his home in the United States, and his wife quit her job. See Ex. H ¶ 16–17, 15(d)–(e), (k); Compl. ¶ 28(g), (k). Many disagreements eventually sprung up between Mr. Permenter and the South African managers. In particular, Mr. Permenter and a manager named Roger Morgan clashed.[4] In mid-October 1996, Mr. Morgan called Mr. Permenter into his office and informed him that he was no longer needed in South Africa. See Ex. A at 80. Following discussion with his superior, Jim Sadler, Mr. Permenter agreed to leave South Africa, believing that he was to be reassigned in the United States. Upon Mr. Permenter's return to the United States, Mr. Sadler attempted to find another position for Mr. Permenter but was unable to do so. See Ex. D at 17, 20, 56, 66–67.

### II. Discussion[5]

#### A. Defendant's Motion for Summary Judgment

Mr. Permenter's lawsuit alleges that 1) Crown breached the employment contract

---

1. All exhibits are those attached to defendant's motion for summary judgement unless otherwise specified.

2. Plaintiff's complaint identifies Mr. Armand as the Manager of Recruiting and Training and Mr. Richter as the Manager of Engineering Services. See Compl. ¶¶ 8, 9.

3. It appears that Mr. Permenter was originally hired to work on "Project Rhino" in Roodekop, South Africa, where he would oversee the construction of a canning plant. Later, he was assigned to be plant manager at Al-

rode, the position he held when he was ultimately told to return to the United States.

4. There is factual dispute as to the reasons for the conflicts. The court accepts as true plaintiff's claim that Mr. Morgan wanted Mr. Permenter to leave South Africa because Mr. Permenter had complained vigorously about plant management and operations.

5. Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with

it made with him, 2) Crown fraudulently induced him to take the position in South Africa and thereby damaged him, and 3) Crown, through its employee Roger Morgan, defamed him and painted him in a false light. The defendant requests summary judgment on each of these claims.

### 1. Choice of Law

Mr. Permenter is a citizen of Florida and was a citizen of Florida at the time of all events in the complaint. The corporate defendant is a citizen of Pennsylvania. The contract of employment was negotiated and finalized in Alsip, Illinois, and the employees of Crown whose actions are most relevant to this case worked at Crown's Illinois facility. Plaintiff, however, contends that he took the job with Crown's Philadelphia office. *See* Resp. to Mot. for Summ. J. at 25. Based on these facts, the defendant believes that the court should apply the law of Illinois; plaintiff believes that the court should apply the law of Pennsylvania.

■ In a diversity action, the court should look to the conflicts regime of the forum state. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941); *LeJeune v. Bliss–Salem, Inc.*, 85 F.3d 1069, 1071 (3d Cir. 1996). Under Pennsylvania's choice of law rules, the court must first look to see whether a true conflict exists. If there is no true conflict, and the law of either state may be applied without impairing the interests of the other, the court should generally apply the law of the forum state. *See Austin v. Dionne*, 909 F.Supp. 271, 274 (E.D.Pa.1995). Only if a true conflict is present should the court continue to consider the appropriate choice of law by combining elements of both the governmental interest approach and the significant contacts test. *See Griffith v. United Air Lines, Inc.*, 416 Pa. 1, 203 A.2d 796 (1964).

■ In the present case, the court will apply Pennsylvania law because there is no true conflict on any of the relevant issues. The law applied by Pennsylvania and Illinois regarding the at-will status of employment contracts is virtually identical, and neither state's interests would be impaired by applying that of the other. Pennsylvania and Illinois law regarding the elements of fraudulent inducement are also almost indistinguishable. Finally, the determination of the invasion of privacy claim is unaffected by the choice of law issues. Under all plaintiff's causes of actions, the states have displayed an attention to the same policy goals and have utilized similar legal structures to accomplish these aims. Consequently, the default choice of law is that of the forum state.[6]

the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party has the burden of demonstrating the absence of any genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). When ruling on a summary judgment motion, the court must construe the evidence and any reasonable inferences drawn therefrom in favor of the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In other words, if the evidence presented by the parties conflicts, the court must accept as true the allegations of the non-moving party. *See id.* However, Rule 56 "mandates the entry of summary judgment ... against a party who fails to make a showing sufficient to establish the existence of an element essen-

tial to that party's case, and on which that party will bear the burden of proof at trial." *See Celotex Corp.*, 477 U.S. at 323, 106 S.Ct. 2548.

The cross-motions in the present case will be evaluated by the same standards. *See Manufacturers Life Ins. Co. v. Dougherty*, 986 F.Supp. 928, 930 (E.D.Pa.1997); *S Indus., Inc. v. JL Audio, Inc.*, 29 F.Supp.2d 878, 887 (N.D.Ill.1998).

6. There is Third Circuit authority that suggests that the court, in such a situation, should avoid the conflict of law question entirely and analyze each issue under the law of each jurisdiction. *See Williams v. Stone*, 109 F.3d 890, 893 (3d Cir.1997); *Lucker Mfg. v. Home Ins. Co.*, 23 F.3d 808, 813 (3d Cir. 1994). Consequently, the court will include discussion of Illinois law.

### 2. Breach of Contract

██ Pennsylvania law presumes that all employment is at-will unless the employee is able to prove otherwise by showing with "clarity and specificity that the parties contracted for a definite period." *See Maier v. Police and Fire Fed. Credit Union,* 813 F.Supp. 326, 332 (E.D.Pa. 1993), *quoting DiBonaventura v. Consolidated Rail Corp.,* 372 Pa.Super. 420, 539 A.2d 865, 867 (1988); *see also Raines v. Haverford College,* 849 F.Supp. 1009, 1011 (E.D.Pa.1994) (same). An at-will employee can be discharged for any or no reason. *See Raines,* 849 F.Supp. at 1011. The presumption will not be overcome absent either an express contract between the parties or an implied in-fact contract plus additional consideration passing from the employee to the employer "from which the court can infer the parties intended to overcome the at-will presumption." *Id.* at 1012 (citations omitted). In the present case, Mr. Permenter cannot demonstrate that he was anything but an at-will employee because he cannot use his employer's estimates of the time he would be needed to overcome the presumption.

Two documents are crucial in this determination. First, the application for employment filled out by Mr. Permenter includes a place for the applicant to sign underneath an "Applicant Statement." That statement includes the following:

> I understand that neither this application, nor any offer of employment from Crown Cork & Seal Company, Inc. constitute an employment contract, unless a specific document to that effect is executed in writing by both an officer of the Company and the employee.

> I understand that my at will employment is for no specified period of time, and may be ended by either myself or the Company at any time with or without notice.

*Ex. F.* Mr. Permenter's signature is immediately below this disclaimer, *see id.,*[7] and Mr. Permenter does not dispute its authenticity. *See* Ex. A at 38.

The second document is Mr. Permenter's international assignment letter detailing his salary, various allowances, benefits, and duties. *See* Ex. C. The first sentence of this letter states that "[t]his is not a contract of employment." *Id.* On the fourth page, under the heading "Termination of International Assignment," the letter states:

> In the event of your re-assignment, your voluntary resignation, or the company's termination of your service *with or without cause,* this International Assignment will be considered terminated and the compensation package as outlined above will cease to apply.

> If you should resign voluntarily, the Company is not obligated to pay your transfer expenses back to the U.S. Otherwise the Company will pay the following expenses to transfer you back to Brandon, Florida.

*Id.* at 4 (emphasis added). The next section says that "nor does the fact that you are recorded as an employee of CSA in Alrode, South Africa affect your continued status as an at will Company employee." *Id.* Mr. Permenter's signature of acknowledgment is also on this document. *See id.* at 5. Mr. Permenter agrees that the signature is his, although he suggests that he did not thoroughly read the document, pointing out at least one factual error it contained. *See* Ex. A at 32–34.

██ These disclaimers are not hidden or obscured, and they were presented to and signed by Mr. Permenter very early in the employment process. While the plaintiff suggests that the assignment let-

---

7. As the copy of this document provided to the court is extremely blurry, the court takes the above quotation from an included blank application form. *See* Ex. G. The plaintiff's included deposition testimony makes no clear claim that he was unable to read the copy that he signed. At best, plaintiff suggests that he does not remember reading the document. *See* Def.'s Reply Brief, Ex. 1 at 37–40, 137.

ter as a whole led him to believe that he was being hired for at least two years, *see, e.g., id.* at 29, 30–31; Resp. to Mot. for Summ. J. at 6, this claim is untenable as a matter of law. An employee handbook or analogous document will not change the employee's status unless it contains a "clear indication that the employer intends to overcome the at-will presumption." *Raines,* 849 F.Supp. at 1012; *see also Ruzicki v. Catholic Cemeteries Ass'n,* 416 Pa.Super. 37, 610 A.2d 495, 497 (1992) (same). A handbook is only enforceable as a contract if a reasonable person in the same position as the employee would interpret its provisions as evidencing an intent by the employer to overcome the presumption. If a handbook or manual contains disclaimers or specifically states that there was no employment contract, the presumption will not be defeated. A plaintiff may not claim ignorance of such provisions in an attempt to downplay their significance. *See Raines,* 849 F.Supp. at 1012, *Ruzicki,* 610 A.2d at 496, 498; *Maier,* 813 F.Supp. at 332. Consequently, the plaintiff cannot maintain that a reasonable person would have viewed the letter as offering anything but at-will employment.[8]

Mr. Permenter raises other objections to this conclusion. First, the plaintiff argues that the oral representations of Crown employees led him to believe that he would be hired for at least two years. Second, plaintiff relies on various documents for the same purposes. Finally, plaintiff suggests that he falls within certain exceptions or qualifications to the at-will doctrine. The court will address each argument in turn.

Mr. Permenter strenuously argues that the oral representations of individuals at Crown led him to believe that he would be hired for two years with an extension of two more years. *See, e.g.,* Ex. A at 22 (stating that Mr. Richter told him that the position "would be two years plus a two-year extension"); Ex. H ¶ 11 (stating that oral representations were basis for belief). When pressed as to the specificity of any representation, Mr. Permenter was unable to say that he had been guaranteed or promised a position with a particular duration. *See, e.g.,* Ex. A at 23–27, 107 (describing conversations with various individuals at Crown Cork & Seal). Under Pennsylvania law, oral representations as to the predicted length of time of employment do not modify the at-will presumption. *See, e.g ., Marsh v. Boyle,* 366 Pa.Super. 1, 530 A.2d 491, 494 (1987) (stating that "the employer's assurances that Appellant would be working as publisher 'for at least two years' was not sufficiently definite to take the agreement out of the at-will employment presumption")[9]; *Engstrom v. John Nuveen & Co., Inc.,* 668 F.Supp. 953, 959 (E.D.Pa.1987) ("The contractual provision necessary to overcome the at-will presumption must be for a specific and definite term, not vague or conclusory"); *Braun v. Kelsey–Hayes Co.,* 635 F.Supp. 75, 77 (E.D.Pa.1986) (holding that verbal representations that plaintiff would be employed so long as he performed his job satisfactorily did not modify at-will status); *Rogers v. Merck & Co., Inc.,* Civ. A. No. 86–2199, 1987 WL 7201 (E.D.Pa. Feb. 26, 1987) (rejecting argument that verbal representations that employee would be employed until retirement constituted modification of at-will status).[10] While

---

**8.** Plaintiff suggests in the response to the motion for summary judgment that he was terminated in violation of employee policies on which he relied. *See* Resp. to Mot. for Summ. J. at 17. However, the record does not include such a document, and the court can make no ruling on it.

**9.** The court in *Marsh* did rule that summary judgment was inappropriate as to other matters: specifically, the significance of plaintiff's

resignation from his previous position, his move to a new city, and his act of placing his home on the market were held to be jury questions. *See id.* at 494. The court will discuss these factors with respect to Mr. Permenter below.

**10.** In his response to the motion for summary judgment, plaintiff invokes the doctrine of equitable estoppel to support his claim regarding an oral promise. This doctrine applies

there are circumstances in which oral representations of an employer could create contractual duties, the plaintiff has simply not come forward with any record evidence that would permit the court to take the matter to a jury.

Mr. Permenter also relies on certain documents in addition to the assignment letter discussed previously. First, in the complaint itself, he cites to two letters from Crown to the South African Consulate General regarding the work visa for Mr. Permenter and his family. While the first letter initially says that Mr. Permenter's assignment would be for two years, in the very next sentence, it states that that time period is an estimate. *See* Compl. Ex. 1. The second letter states that "Mr. Permenter's services will be required for approximately two years and then he will be replaced by a South African national and will return to the United States." Compl. Ex. 2. Neither of these documents shows that Mr. Permenter was guaranteed a two year position: Crown clearly represents the two-year period as an estimate or an approximation. Mr. Permenter also refers to copy of a contract with long-term employment that he admits he never signed, *see* Ex. A at 27, as well as to a copy of the company's long-term benefits package and policy statements. *See id.* at 27–28. As neither of these documents were included in the record, the court cannot and does not consider them.

Finally, the plaintiff attempts to avail himself of three "exceptions" to the at-will doctrine. First, he claims that he provided additional consideration to his employer. Second, he argues that Mr. Morgan's specific intent to harm him removes his employment from at-will status. Finally, he hints that the public policy exception to at-will employment applies to him.

The presumption of at-will employment may be overcome by a showing that the employee provided additional consideration to the employer and that termination of employment would result in great hardship or loss to the party known to both employer and employee when the contract was made. *See Darlington v. General Elec.*, 350 Pa.Super. 183, 504 A.2d 306, 314 (1986), *overruled on other grounds Clay v. Advanced Computer Applications, Inc.*, 522 Pa. 86, 559 A.2d 917 (1989). One type of consideration often discussed is the relocation of an employee, particularly when accompanied by relocation of a family. *See Shaffer v. BNP/Cooper Neff, Inc.*, Civ.A. No. 98–71, 1998 WL 575135, *4 (E.D.Pa. Sept.4, 1998) (collecting cases). Other relevant factors include abandonment of other job opportunities and the sale of a home. *See Marsh*, 530 A.2d at 494. Ordinarily, the determination of whether such factors constitute sufficient consideration to overcome the at-will presumption is a jury question. However, the court may rule on the issue when the "evidence is so clear that no reasonable [person] would determine the issue before the court in any way but one[.]" *Shaffer*, 1998 WL 575135, at *7, *quoting Darlington*, 504 A.2d at 312; *see also Martin v. Safeguard Scientifics*, 17 F.Supp.2d 357, 369 (E.D.Pa.1998) (same).

The present case is a close one, but several factors persuade the court that the issue should not go to the jury. On the one hand, Mr. Permenter terminated his own consulting business, he sold his home and many of his possessions, his wife quit her job, and they relocated to South Africa on the belief that he would be working there for at least two years. Weighing against these factors, however, is plaintiff's

---

only to enforce a promise when there has been no consideration; when, as here, there is no proof of a promise, it clearly cannot apply. *See, e.g., Holewinski v. Children's Hosp. of Pittsburgh*, 437 Pa.Super. 174, 649 A.2d 712, 714 (1994). Perhaps more importantly, Pennsylvania law does not recognize

promissory estoppel as an exception to the at-will doctrine. *See, e.g., Geiger v. AT & T Corp.*, 962 F.Supp. 637, 648 (E.D.Pa.1997); *Stumpp v. Stroudsburg Mun. Auth.*, 540 Pa. 391, 658 A.2d 333, 335–36 (1995); *Paul v. Lankenau Hosp.*, 524 Pa. 90, 569 A.2d 346, 348 (1990).

acknowledgment, discussed previously, that his employers never guaranteed him a position for two years but rather estimated that two years would be its duration. Moreover, Mr. Permenter signed two documents that prominently stated that he was an at-will employee and that his assignment letter did not constitute a contract of employment. Even if the court were to find additional consideration, the disclaimers require the court to interpret this as an at-will contract. *See Sharp v. BW/IP Int'l, Inc.*, 991 F.Supp. 451, 458 (E.D.Pa.1998); *Darlington*, 504 A.2d at 314 ("[I]f the parties specifically agreed that the employment would be *at-will*, even though additional consideration were present, we would expect a court to construe the contract according to the parties' stated intention and hold it to be at-will"). The significance of the move and his wife's relocation is also undercut. Mr. Permenter was entitled to a housing allowance in South Africa, moving expenses both to and from South Africa, costs for the forced sale of a vehicle, as well as various other benefits. *See* Ex. C. These provisions make it clear that Mr. Permenter was not gratuitously providing the company with his services in South Africa. Also, Mr. Permenter apparently would have had no quarrel with Crown had it found him a new position in the United States, a situation that would have still required him to move to and from South Africa and relocate his family.

Plaintiff also suggests that he provided additional consideration by agreeing to his early reassignment from Project Rhino to the Alrode plant managing position. It is not clear that Mr. Permenter was promised one specific job, as the proof presented by plaintiff on this point consists solely of a cryptic document that does not clearly state that Mr. Permenter was *only* to work on Project Rhino. *See* Resp. to Mot. for Summ.J., Ex. 1. In contrast, the assignment letter includes a clause that covers the possibility of reassignment. *See* Ex. C at 3. Even assuming, however, that the court was to consider the change in assignment as consideration, the reassignment is insufficient as a matter of law to overcome the at-will presumption. Mr. Permenter does not detail or provide proof of any hardship he might have suffered unique to the reassignment; i .e., he does not connect it to such events as relocating his family. As he has stated numerous times, when he accepted the job, he believed that it was for two years, and he cannot now maintain that he did not plan to be in South Africa for the full time period.

Mr. Permenter next argues that his discharge by Mr. Morgan was motivated by a specific intent to harm him and that this creates an exception to the at-will doctrine. The difficulty with this position is that both Pennsylvania state courts and federal courts ruling on Pennsylvania law have held that this exception no longer exists, if indeed it ever did; rather, the only exception to the at-will doctrine is the public policy exception to be discussed subsequently. *See Krajsa v. Keypunch, Inc.*, 424 Pa.Super. 230, 622 A.2d 355, 360 (1993) (rejecting existence of specific intent exception); *Mulgrew v. Sears Roebuck & Co.*, 868 F.Supp. 98, 100–03 (E.D.Pa.1994) (discussing Pennsylvania case law extensively and rejecting existence of exception). Although the cases relied upon by plaintiff, such as *Geary v. United States Steel Corp.*, 456 Pa. 171, 319 A.2d 174 (1974), and *Tourville v. Inter–Ocean Ins. Co.*, 353 Pa.Super. 53, 508 A.2d 1263 (1986), do suggest that such a claim is viable, later decisions by the Pennsylvania lower courts have discredited those opinions. *See Mulgrew*, 868 F.Supp. at 101. This court agrees with the holding in *Mulgrew* and believes that Pennsylvania courts would not recognize this cause of action.

 This brings the court to plaintiff's last argument on this subject. Retaliatory discharge violating a clear public policy is an exception to the at-will doctrine, *see Braun*, 635 F.Supp. at 79, and plaintiff attempts to utilize this exception by arguing that Mr. Morgan fired him for revealing problems with the plant in

South Africa. This exception is very narrowly construed, and Pennsylvania courts have generally held that for it to apply, the plaintiff must demonstrate that a statute or constitutional provisions applied to his case and that the discharge resulted from his duty to act in accordance with applicable law. *See Krajsa,* 622 A.2d at 359. Even if an important public policy is at issue, a discharge is permissible if the employer has "separate, plausible, and legitimate reasons for doing so." *Betts v. Stroehmann Bros.,* 355 Pa.Super. 195, 512 A.2d 1280, 1281 (1986); *see also Marsh,* 530 A.2d at 495 (noting high burden of an employee to challenge a termination under this theory). Mr. Permenter does not present any theory whatsoever as to what public policy is harmed by permitting his termination. His position could be construed as a version of a whistle-blower exception, but it is largely unexplained, and the law on the subject does not support such an argument. *See, e.g., Holewinski v. Children's Hosp. of Pittsburgh,* 437 Pa.Super. 174, 649 A.2d 712, 715 (rejecting application of public policy exception to similar whistleblower). Plaintiff also ignores the fact

that Mr. Morgan did not fire him: Mr. Morgan simply told plaintiff to return to the United States, and Mr. Sadler ultimately terminated him because there were no jobs available in the United States. *See* Ex. D at 17, 56, 66–67. Even if Mr. Permenter could point to a public policy issue, the exception is not implicated by reassignment from South Africa to the United States.

In sum, there is no evidence that would tend to create a genuine issue of material fact that the presumption against at-will employment was overcome. There was thus no breach of contract.[11]

**3. Fraudulent Inducement**

Mr. Permenter's second claim is for fraudulent inducement, and his allegations as to this count largely mirror those of the breach of contract claim: Mr. Permenter claims that Crown fraudulently induced him to sell his home, reject various business opportunities, and relocate to South Africa.

■■■■■ To state a cause of action for fraud, Pennsylvania law requires the show-

11. The result would be no different under Illinois law. In Illinois, an employment contract is presumed to be at-will and terminable by either party with or without cause. *See McInerney v. Charter Golf, Inc.,* 176 Ill.2d 482, 223 Ill.Dec. 911, 680 N.E.2d 1347, 1349 (1997); *Evans v. Gurnee Inns, Inc.,* 268 Ill.App.3d 1098, 206 Ill.Dec. 551, 645 N.E.2d 556, 559 (1995). "The at-will rule is a rule of construction only, however, creating a mere rebuttable presumption that a hiring without a fixed term is at will." *Evans,* 206 Ill.Dec. 551, 645 N.E.2d at 559; *see also Duldulao v. Saint Mary of Nazareth Hospital Ctr.,* 115 Ill.2d 482, 106 Ill.Dec. 8, 505 N.E.2d 314, 317 (1987). The presumption can be overcome by demonstrating that the parties contracted otherwise. *See Evans,* 206 Ill.Dec. 551, 645 N.E.2d at 559; *Habighurst v. Edlong Corp.,* 209 Ill.App.3d 426, 154 Ill.Dec. 226, 568 N.E.2d 226, 228 (1991). However, "[d]isclaimers of any contractual intention are inconsistent with the traditional requirements of contract formation[.]" *Hawthorne v. St. Joseph's Carondelet Child Ctr.,* 982 F.Supp. 586, 595 (N.D.Ill.1997); *see also Davis v. Times Mirror Mags., Inc.,* 297 Ill.App.3d 488,

231 Ill.Dec. 826, 697 N.E.2d 380, 388 (1998) (noting same).

As in Pennsylvania, an employee handbook or other analogous policy statement may create enforceable, contractual rights, but such a contract is created only if all of the traditional elements of contract formation are present. *See Doe v. First Nat'l Bank of Chicago,* 865 F.2d 864, 872 (7th Cir.1989); *Duldulao,* 106 Ill.Dec. 8, 505 N.E.2d at 314. Explicit disclaimers are effective when made in the context of a handbook or policy. *See Davis,* 231 Ill.Dec. 826, 697 N.E.2d at 388; *Svigos v. Petry Television, Inc.,* No. 95–c–5899, 1996 WL 388416, *3–4 n. 5 (N.D.Ill. July 9, 1996) (rejecting claim of contract based on employee handbook because the disclaimer's "plain text prevents an employee from reasonably believing that the handbook language could 'constitute a contract between the Company and any on or all of its employees' ").

Illinois also applies strict standards to the use of the public policy exception. *See, e.g., Davis,* 231 Ill.Dec. 826, 697 N.E.2d at 386; *Hinthorn v. Roland's of Bloomington, Inc.,* 119 Ill.2d 526, 116 Ill.Dec. 694, 519 N.E.2d 909, 911–13 (1988).

ing of 1) a misrepresentation; 2) a fraudulent utterance thereof; 3) an intention by the maker that the recipient will thereby be induced to act; 4) justifiable reliance by the recipient upon the misrepresentation; and 5) damage to the recipient as the proximate result. *See Delahanty v. First Penn. Bank,* 318 Pa.Super. 90, 464 A.2d 1243, 1252 (1983); *New York State Elec. & Gas v. Westinghouse,* 387 Pa.Super. 537, 564 A.2d 919, 927 (1989). The burden on the plaintiff when pleading fraud is high: the proof must be "clear, precise, and convincing." *Delahanty,* 464 A.2d at 1252–53 (citations omitted); *Engstrom,* 668 F.Supp. at 964. Accordingly, a plaintiff must point to a specific statement that caused a particular harm. *See, e.g., Sun Co. v. Badger Design & Constructors,* 939 F.Supp. 365, 369 (E.D.Pa.1996). "Plaintiff may not simply point to a bad result and allege fraud. Rather, plaintiff must ... inject precision and some measure of substantiation into [the] allegations [of fraud]." *Id.* at 369 (citations omitted). The mere nonperformance of an agreement is not in itself evidence of fraud. *See id.* at 370; *Mellon Bank v. First Union,* 750 F.Supp. 711, 715 (W.D.Pa.1990) (noting that Pennsylvania courts hold that a broken promise to do something in the future is not fraud so as to permit admission of parol testimony to vary terms of written agreement); *Stout v. Peugeot Motors of Amer.,* 662 F.Supp. 1016, 1018 (E.D.Pa.1986) (stressing that cause of action for breach of contract may

not be automatically transformed into tort claim).

▬▬▬▬ Mr. Permenter has not pointed out, either in pleadings or in his response to the motion for summary judgment, any particular misrepresentation, made knowingly or recklessly, on which he relied. Error or lack of knowledge on the part of Crown is not, in the circumstances, sufficient for a showing of such misrepresentation. *See New York State Elec. & Gas,* 564 A.2d at 927–28 (affirming grant of summary judgment when plaintiff demonstrated only lack of knowledge by defendant rather than fraudulent intent and knowledge). As described more thoroughly in the earlier discussion, Mr. Permenter can only show that the Crown representatives who offered him the job believed that his employment was to last two years; he cannot show that they knew otherwise but deceived him.[12]

### 4. False Light and Defamation

▬▬▬ Pennsylvania's borrowing statute states that the applicable statute of limitations for claims accruing outside of Pennsylvania shall be "either that provided or prescribed by the law of the place where the claim accrued or by the law of this Commonwealth, whichever first bars the claim." 42 Pa.Con.Stat. § 5521. Both Pennsylvania and Illinois have a one-year statute of limitations for invasion of privacy claims. *See* 42 Pa.Con.Stat. § 5523(1);

---

**12.** The result would be no different under Illinois law. The elements of fraud in Illinois are 1) a false statement of material fact; 2) known or believed to be false by the party making it; 3) intent to induce the other party to act; 4) action by the other party in justifiable reliance on the truth of the statement, and 5) damage resulting from reliance. *See Roadside Auto Body, Inc. v. Miller,* 285 Ill. App.3d 105, 220 Ill.Dec. 724, 673 N.E.2d 1145, 1150 (1996); *Industrial Specialty Chem., Inc. v. Cummins Engine Co.,* 902 F.Supp. 805, 813 (N.D.Ill.1995). As in Pennsylvania, a "claim of fraud for an alleged misrepresentation of future conduct cannot be grounded solely on the broken promise itself[.]" *Industrial Specialty Chem., Inc.,* 902 F.Supp. at 813; *see also Bower v. Jones,* 978

F.2d 1004, 1012 (7th Cir.1992) (a broken promise does not constitute fraud without a showing of that promisor never intended to keep his or her word); *Price v. Highland Comm. Bank,* 722 F.Supp. 454, 459–60 (N.D.Ill.1989) (noting that, while a change of mind can constitute breach of contract, it is not automatically fraud without a showing of the elements of that tort); *Resource Dealer Group, Inc. v. Executive Servs., Ltd.,* No. 97–c–4343, 1997 WL 790737, *2 (N.D.Ill.1997) ("It is important to keep in mind that both fraud and contracts involve promises, but one thing distinguishes the two is intent to deceive"). It is the plaintiff's burden to point to "specific, objective manifestations of fraudulent intent." *Id.* at *3.

735 Ill.Comp.Stat. 5/13–201. Mr. Permenter's claims are accordingly barred. According to the complaint and Mr. Permenter's testimony, the statements in question all occurred in October and November of 1996. *See* Compl. ¶ 43–44; Ex. A at 85–86 (describing allegedly defamatory bulletin and comments by Roger Morgan immediately following Mr. Permenter's return to the United States); *id.* at 93–94 (describing Mr. Morgan's allegations that Mr. Permenter had been involved in a traffic accident while under the influence of alcohol made immediately upon Mr. Permenter's return to the United States); Ex. H ¶ 18 (recounting same incidents in response to interrogatories). Mr. Permenter is not able to point to any other comments that would be defamatory or cast a false light on him. As this complaint was filed on July 29, 1998, these claims are clearly time-barred.

In response, Mr. Permenter makes the perplexing argument that his false light claim is not an invasion of privacy claim and hence should fall under a different, two year, statute of limitations. *See* Resp. to Mot. for Summ.J. at 39. Pennsylvania and Illinois law clearly hold that a claim for false light is a claim for invasion of privacy, *see, e.g., Seale v. Gramercy Pictures*, 949 F.Supp. 331, 338 (E.D.Pa.1996); *Bryson v. News Amer. Pub.*, 174 Ill.2d 77, 220 Ill.Dec. 195, 672 N.E.2d 1207, 1222 (1996), and it is disingenuous to suggest otherwise.

### III. *Plaintiff's Motion for Partial Summary Judgment*

Plaintiff requests summary judgment on a portion of his breach of contract claim that alleges that his taxes were wrongly withheld. The complaint alleges that the defendant breached the contract "[b]y failing to make appropriate tax payments on account of withholding taxes taken from the Plaintiff's gross salary." Compl. ¶ 31(c). In support of this claim, plaintiff recounts deposition testimony in which Mr. Permenter alleges that there is a discrep-

ancy between what Crown withheld and what was paid to the IRS. *See* Resp. to Mot. for Summ.J. at 24–25. Again, these pages from the deposition are not in the record.

In its own motion for summary judgment, defendant provides several exhibits indicating that Crown offered to pay Price Waterhouse to complete Mr. Permenter's federal tax return in 1996 and that Crown explained to Mr. Permenter that, should he reject this offer, he would be required to forfeit tax equalization. *See* Exs. J, K, L. The matter was complicated because a personal gift made by Mr. Permenter to his son would have required Mr. Permenter to pay out-of-pocket for that portion of the return. *See id.*

■ Mr. Permenter has provided no evidence other than his own assertions that there was a tax irregularity consisting of a breach of contract, and the documents presented by defendant tend to show that any problems stemmed from plaintiff's own decision. Accordingly, summary judgment will be denied to Mr. Permenter and granted in favor of Crown.

### IV. *Conclusion*

The plaintiff cannot demonstrate the existence of a genuine issue of material fact as to any of the claims made in the complaint. At best, Mr. Permenter has demonstrated that both he and the defendant erroneously believed that the position in South Africa would last for a full two years. He has not, however, shown that Crown intended to change his at-will employment status or that a reasonable person could have so believed. The fraudulent inducement claim must fail because the plaintiff cannot make even a weak showing of intent to defraud or mislead, and the invasion of privacy claims are clearly outside of the statute of limitations. Accordingly, this complaint will be dismissed in its entirety.

An appropriate Order follows.

384

## ORDER

**AND NOW,** this 26th day of February, 1999, upon consideration of Defendant's Motion for Summary Judgment, Plaintiff's Motion for Partial Summary Judgment, and the responses thereto, it is hereby **ORDERED** that:

1. Defendant's Motion is **GRANTED,** and

2. Plaintiff's Motion is **DENIED.**