725 N.E.2d 792 (2000)
311 Ill. App.3d 900
244 Ill.Dec. 319
Jerry BURGESS, as Special Administrator of the Estate of Delbert Burgess, Deceased, and Francis Burgess, Plaintiffs-Appellees,
v.
ABEX CORPORATION, by its successor-in-interest, PNEUMO ABEX CORPORATION, Defendant-Appellant.
Jerry Burgess, as Special Administrator of the Estate of Delbert Burgess, Deceased, and Francis Burgess, Plaintiffs-Appellees,
v.
Illinois Central Railroad Company; Abex Corporation; Metropolitan Life Insurance Company; Cape Industries, PLC; and Owens-Illinois, Inc., Defendants (Pittsburgh Corning Corporation, Defendant-Appellant).
Nos. 4-98-0354, 4-98-0356.
Appellate Court of Illinois, Fourth District.
March 1, 2000.
*793 Jerold S. Solovy, Donald R. Harris, Barry Levenstam (argued), David M. Feinberg, Jenner & Block, Chicago, for Abex Corporation.
James Wylder (argued), Walker & Wylder, Ltd., Bloomington, for Jerry Burgess.
Dennis J. Dobbels (argued), Brian W. Fields, Polsinelli, White, Vardeman & Shalton, Kansas City, MO, for Pittsburgh Corning Corporation.
Presiding Justice COOK delivered the opinion of the court:
On December 1, 1999, the supreme court, in the exercise of its supervisory authority, vacated the decisions in these cases and directed this court to reconsider its judgment in light of McClure v. Owens Corning Fiberglas Corp., 188 Ill.2d 102, 241 Ill.Dec. 787, 720 N.E.2d 242 (1999).
McClure involved three workers at Union Asbestos and Rubber Company's (Unarco) Bloomington plant who worked there during the period 1952-65. The plant was owned by Unarco and used asbestos, including asbestos supplied by Johns-Manville Corporation (Johns-Manville).
In McClure, the supreme court reversed judgments against Owens Corning Fiberglas *794 Corporation (Owens Corning) and Owens-Illinois, Inc. (Owens-Illinois), and entered judgments in their favor, holding that parallel conduct may serve as circumstantial evidence of a civil conspiracy among manufacturers of the same or similar products but is insufficient proof, by itself, of the agreement element of civil conspiracy. McClure, 188 Ill.2d at 135, 241 Ill.Dec. 787, 720 N.E.2d at 259. It is necessary to "determine whether any evidence, other than evidence of parallel conduct, was presented at trial and whether this evidence, considered with any evidence of parallel conduct, was sufficient to establish the existence of an agreement between defendants and Unarco or Johns-Manville to suppress or misrepresent information regarding the health hazards of asbestos." McClure, 188 Ill.2d at 142-43, 241 Ill.Dec. 787, 720 N.E.2d at 262. The court held that the jury could have found parallel action based on the evidence that, like Unarco or Johns-Manville, Owens Corning and Owens-Illinois (1) knew that asbestos could cause disease at the time they sold asbestos-containing products, (2) sold these products without warning of these diseases, (3) failed to warn employees and consumers of these diseases, and (4) failed to adequately protect their employees from exposure to asbestos dust. McClure, 188 Ill.2d at 146, 241 Ill.Dec. 787, 720 N.E.2d at 264.
The court ruled, however, that the following evidence, considered in addition to the evidence of parallel conduct, did not permit a reasonable inference of the alleged agreement between defendants and Unarco or Johns-Manville. McClure, 188 Ill.2d at 147, 241 Ill.Dec. 787, 720 N.E.2d at 264. First, the mere exchange of information by manufacturers of the same or similar products is a common practice and does not support an inference of an agreement. McClure, 188 Ill.2d at 147, 241 Ill.Dec. 787, 720 N.E.2d at 265. Second, the circumstances of the 1979 meeting following the Califano announcement, and the 1983 Asbestos Claims Conference, prohibited a reasonable inference of the alleged agreement. The Califano announcement had already been made, and Owens Corning had already warned large numbers of past and present employees about these hazards. McClure, 188 Ill.2d at 148-49, 241 Ill.Dec. 787, 720 N.E.2d at 265. Third, Owens Corning and Johns-Manville's participation in the drafting of the National Insulation Manufacturers Association, Inc. (NIMA), pamphlet in 1969 or 1970 did not support an inference of agreement. Courts have been unwilling to infer an agreement based on membership in industry trade organizations, and no evidence indicated to what extent Owens Corning and Johns-Manville controlled the content of the pamphlet. McClure, 188 Ill.2d at 149-50, 241 Ill.Dec. 787, 720 N.E.2d at 266. Fourth, no evidence showed that Owens Corning's purchase of the Bloomington plant was anything other than an arm's-length transaction between competitors. McClure, 188 Ill.2d at 150, 241 Ill.Dec. 787, 720 N.E.2d at 266.
In summary, the contacts between defendants, Unarco, and Johns-Manville were isolated, particularly with respect to Owens-Illinois, and an inference of agreement based on these contacts was not reasonable. McClure, 188 Ill.2d at 151, 241 Ill.Dec. 787, 720 N.E.2d at 267.
What difference is there between evidence of "parallel conduct" and "evidence, other than evidence of parallel conduct"? McClure, 188 Ill.2d at 142, 241 Ill.Dec. 787, 720 N.E.2d at 262. If one business knows of a practice of another business that is harmful to employees or consumers, chooses to employ that practice itself, profits from the practice, and takes steps to prevent disclosure that it and the other business employ the practice, is that evidence of parallel conduct or other evidence of agreement? Is it enough to show a meeting took place between the two businesses after which both pursued the same harmful practice and resisted any disclosure? Or is it necessary for one of the businesses *795 to admit that an agreement existed before there can be a civil conspiracy?
Adcock v. Brakegate, Ltd., 164 Ill.2d 54, 206 Ill.Dec. 636, 645 N.E.2d 888 (1994), was distinguished as a case decided on the pleadings, where the trial court entered a judgment against Owens Corning as to liability as a sanction for its failure to produce certain witnesses. McClure quoted (McClure, 188 Ill.2d at 134, 241 Ill.Dec. 787, 720 N.E.2d at 258), but did not comment on, Adcock`s statement: "A defendant who understands the general objectives of the conspiratorial scheme, accepts them, and agrees, either explicitly or implicitly[,] to do its part to further those objectives * * * is liable as a conspirator" (Adcock, 164 Ill.2d at 64, 206 Ill.Dec. 636, 645 N.E.2d at 894). We conclude that McClure necessarily rejects that statement in Adcock. Implicit agreement, at least an agreement implicitly shown by parallel conduct, is not sufficient to show a conspiracy.
The present case involves an individual, Delbert Burgess, who was involved as a security guard at the Unarco plant during 1953-54, briefly in 1961, and again during 1964-69. He was diagnosed as having mesothelioma in early 1993, and he died June 18, 1993. Neither Abex nor Pittsburgh Corning Corporation (PCC) ever employed Burgess, and no evidence shows that any Abex or PCC product was ever used in the Unarco plant where Burgess worked.
In Burgess, we stated there was evidence that Abex and Unarco directly entered into an agreement to conceal the dangers of asbestos. Burgess v. Abex Corp., 305 Ill.App.3d 859, 864-65, 238 Ill. Dec. 835, 712 N.E.2d 939, 944 (1999). Abex signed the 1936 agreement to underwrite the experiments at Saranac Lake. Abex received a copy of the 1948 report, but apparently returned it at the request of Johns-Manville's general counsel, Vandiver Brown, who wanted all references to cancers and tumors deleted and felt it would be most unwise to have any copies of the draft report outstanding, if the final report was to be different in any substantial respect. There clearly was evidence here, other than evidence of parallel conduct, which was sufficient to establish the existence of an agreement between Abex and Johns-Manville to suppress or misrepresent information regarding the health hazards of asbestos. See McClure, 188 Ill.2d at 142-43, 241 Ill.Dec. 787, 720 N.E.2d at 262-63.
To state a claim for civil conspiracy, a plaintiff must allege the agreement and also a tortious act committed in furtherance of that agreement. Adcock, 164 Ill.2d at 62-64, 206 Ill.Dec. 636, 645 N.E.2d at 893-95; McClure, 188 Ill.2d at 133, 241 Ill.Dec. 787, 720 N.E.2d at 258. The jury here could have found that Abex's return of the report was a tortious act committed in furtherance of the agreement, as were Abex's employee publications that made no reference to asbestosis, cancer, or industrial dust hazards. The jury could have found that any number of actions by Unarco constituted such acts.
Abex has no direct connections with the plaintiff here. Abex never employed Burgess, did not purchase the plant where he was employed (Owens Corning did), and did not purchase the plant's product line (PCC did). That was also the case in McClure, but McClure indicates that the key criterion is evidence other than parallel conduct of an agreement to suppress or misrepresent information regarding the health hazards of asbestos. McClure, 188 Ill.2d at 142-43, 241 Ill.Dec. 787, 720 N.E.2d at 262. Such evidence exists in this case. The general rule is that even where plaintiff has the burden of proof in the trial court to prove his case by clear and convincing evidence, the standard of review in the appellate court is whether the trial court's decision is against the manifest weight of the evidence. In re D.J.S., 308 Ill.App.3d 291, 294-95, 241 Ill. Dec. 765, 719 N.E.2d 1168, 1171-72 (1999) (parental unfitness); Roadside Auto Body, *796 Inc. v. Miller, 285 Ill.App.3d 105, 113, 220 Ill.Dec. 724, 673 N.E.2d 1145, 1150 (1996) (fraudulent misrepresentation). The rule may be different in this case. See McClure, 188 Ill.2d at 147, 241 Ill.Dec. 787, 720 N.E.2d at 264 ("At most, these facts are as consistent with innocent as with guilty conduct. Thus, they do not support a finding by the jury that there was clear and convincing evidence of an agreement").
Abex argues that since the supreme court has now held that the evidence against Owens Corning and Owens-Illinois in McClure was insufficient to establish that Owens Corning and Owens-Illinois participated in any asbestos conspiracy, it is clear that numerous prejudicial exhibits showing the bad practices of Owens Corning and Owens-Illinois were admitted in the present case on the mistaken theory that Owens Corning and Owens-Illinois were coconspirators. In addition, Dr. Castleman improperly testified extensively regarding Owens Corning's and Owens-Illinois' knowledge of the hazards of asbestos and their failure to tell their own workers about such hazards. We agree, and we reverse and remand the judgment against Abex for a new trial on all issues. At that trial, the parties will be free, subject to the guidelines laid down by the supreme court in McClure, to seek admission of any additional evidence indicating that Abex, Owens-Illinois, Owens Corning, and others were or were not members of a conspiracy.
In contrast to Abex, the situation of PCC seems very similar to that of Owens Corning, for which the supreme court entered judgment in McClure. Owens Corning purchased Unarco's Bloomington plant in 1970. PCC purchased the right to make Unibestos, the product manufactured at the Bloomington plant, from Unarco in 1962, and purchased a Tyler, Texas, plant from Unarco where it continued Unarco's Unibestos production. There was evidence that the Tyler plant was notorious in its use of asbestos. The supreme court concluded in McClure that there was no evidence the purchase was anything other than an arm's-length transaction between competitors and would apparently draw that same conclusion here. See McClure, 188 Ill.2d at 150, 241 Ill.Dec. 787, 720 N.E.2d at 266. PCC's employee, Roy Fuhs, attended a meeting of the Southwest Insulation Contractors Association in 1968 in Biloxi, Mississippi, where Owens Corning and Johns-Manville employees brought the group up to date on what NIMA was doing "to counteract some very adverse activity at the present time." Fuhs then reported to a PCC vice-president that the problem of health hazards among asbestos workers was becoming critical (30% of current asbestos workers had pulmonary problems) "and that a strong united front [was] necessary to preserve this industry." Fuhs accordingly recommended that PCC join NIMA. That recommendation was apparently not accepted. PCC apparently also attended the 1979 meeting following the Califano announcement.
Most of these factors were present in McClure. In McClure, Owens Corning had purchased the Unarco plant and had attended the 1979 meeting, but that was not enough to show agreement. McClure, 188 Ill.2d at 148-50, 241 Ill.Dec. 787, 720 N.E.2d at 265-66. Owens Corning's membership in NIMA, and participation in the drafting of the NIMA pamphlet, did not support an inference of an agreement. McClure, 188 Ill.2d at 149-50, 241 Ill.Dec. 787, 720 N.E.2d at 266. If participation in NIMA meetings and activities cannot support an inference of an agreement, a nonmember's listening to a report of a NIMA meeting logically cannot do so either. Unarco's activities and PCC's activities constituted a course of parallel conduct (see McClure, 188 Ill.2d at 146, 241 Ill.Dec. 787, 720 N.E.2d at 264 (knowledge of danger, sales despite that knowledge, failure to warn employees or consumers, and failure to protect employees)), but that was not enough to show a civil conspiracy in McClure.
*797 Accordingly, we reconsider our judgment in light of McClure. We reverse the circuit court's judgment in favor of Burgess and against Abex and remand for a new trial, and we reverse the judgment against PCC and order that judgment be entered in PCC's favor.
Reversed and cause remanded with directions.
GARMAN and MYERSCOUGH, JJ., concur.